## AGNES TARGONSKI ET AL. *v.* WALTER A. CLEBOWICZ
### (AC 33834)

DiPentima, C. J., and Bear and Sheldon, Js.

Argued November 29, 2012—officially released April 23, 2013

*Juri E. Taalman*, with whom, on the brief, was *Timothy Brignole*, for the appellants (plaintiffs).

*Elizabeth M. Cristofaro*, with whom, on the brief, was *Sandra Snaden Kuwaye*, for the appellee (defendant).

*Opinion*

SHELDON, J. In this action for legal malpractice, the plaintiffs, Agnes Targonski and Krzysztof Targonski, appeal from the summary judgment rendered against them in favor of the defendant, Walter A. Clebowicz, an attorney, on the ground that their action is barred by the general three year tort statute of limitations, General Statutes § 52-577.[1] On appeal, the plaintiffs claim that summary judgment was improper because the evidence before the trial court raised a genuine issue of material fact as to whether the continuing course

---

[1] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

of conduct doctrine tolled the statute of limitations.[2] Because we agree with the plaintiffs, we reverse the judgment of the trial court.

The following facts and procedural history are necessary to our disposition of this appeal. Between April 18, 2004, and June 9, 2004, the defendant represented the plaintiffs with respect to a real estate transaction to purchase an undeveloped building lot on Indian Hill Road in Higganum (premises) together with a right-of-way over an adjacent lot retained by the seller, Karen Delahunty, for use as a driveway (right-of-way). On April 18, 2004, the plaintiffs and Delahunty entered into a written purchase and sale agreement with respect to the premises and the right-of-way (agreement), which was conditioned expressly upon both Delahunty's provision of the right-of-way and the plaintiffs' promise to build a house on the premises of more than 2000 square feet. Delahunty retained attorney Thomas E. Cronan to represent her in connection with the transaction.

When, on June 9, 2004, the defendant conducted the closing on behalf of the plaintiffs, he was aware of the terms and conditions of the agreement, including, inter alia, its right-of-way contingency.[3] The warranty deed for the premises (deed) that he ultimately obtained from Delahunty on behalf of the plaintiffs, however, made no

---

[2] Because we agree with the plaintiffs that the evidence before the trial court raised a genuine issue of material fact as to whether the continuing course of conduct doctrine tolled the statute of limitations, we need not address their alternate claim for reversal of the judgment, which is based on the continuous representation doctrine.

[3] At her deposition, Agnes Targonski stated that before the closing, she explained to the defendant: "I dropped off a purchase and sales agreement. And I'm buying land to build a house, and that the only thing, other than the normal stuff that [the defendant] does, whatever [the defendant] does, to look at page 3 [of the agreement], and then there are contingency things to go on . . . paperwork. To look at those contingencies, and make sure they're in effect because I need to get into my house. I need the right-of-way to get into my house."

mention of the right-of-way. Even so, when the plaintiffs asked the defendant, after the closing, if the right-of-way had been included in the deed, the defendant assured them that they "need not worry about it."[4] The plaintiffs understood the defendant's response to mean that they in fact had acquired the right-of-way.

On several occasions after June 9, 2004, Cronan contacted the defendant in writing to advise him that the parties had not yet incorporated the right-of-way into the deed and to propose specific steps that might be taken to cure the problem.[5] In the first such communication, a letter dated November 9, 2004, Cronan proposed that the parties execute a contract addendum and easement/maintenance agreement in order to correct the omission of the right-of-way from the deed.[6] To facilitate the implementation of this proposal, Cronan attached copies of a proposed contract addendum and a proposed easement/maintenance agreement to his letter and asked the defendant to call him to discuss them. The defendant never responded to this letter. Accordingly, four weeks later, in a follow-up letter to the defendant dated December 7, 2004, Cronan repeated his offer to cure the omission of the right-of-way from the deed by having the plaintiffs and his client enter into an easement agreement.[7] The defendant failed to respond

---

[4] At her deposition, Agnes Targonski stated that, at the conclusion of the closing, she "asked [the defendant] if he took care of the contingency, right-of-way, and the over 2000 square foot. And he's, like, oh, I took care of it. And I said because I want an entrance to my house."

[5] These communications were marked as exhibits during the defendant's deposition and identified by him as documents he had received in 2004.

[6] The November 9, 2004 letter provided in relevant part: "I have attached a copy of a contract addendum whose provisions never made it into the deed.

"I have also attached an unexecuted easement/maintenance agreement . . . which I suggest we use for your clients as well."

[7] The December 7, 2004 letter provided in relevant part: "I have not received any response to my fax letter to you dated 11/9/04 . . . .

"Does that mean that your clients are not interested in a formal easement agreement?"

to this letter as well. Finally, in a third letter dated December 22, 2004, Cronan informed the defendant, with regret, that, since there had as yet been no response to his proposal, "your clients will not enjoy a right of way over my client's lot unless and until we have resolved the issue of a written easement agreement."[8] Despite this clear warning, the defendant never responded to any of Cronan's letters, never informed the plaintiffs of their existence or their contents, and never took any other action to correct or apprise the plaintiffs of the omission of the right-of-way from the deed.

The plaintiffs subsequently constructed a house on the premises. Because the plaintiffs built their house too close to the setback line, however, the town required the plaintiffs to acquire additional property from Delahunty in order to conform to zoning regulations and obtain a certificate of occupancy. Thus, on August 25, 2005, the plaintiffs purchased an additional 48.61 square feet of property from Delahunty, who was still represented by Cronan.[9] Thereafter, on September 20, 2005, the defendant represented the plaintiffs in connection with the refinancing of their enlarged property, by which they converted the construction loan, with which they had financed the purchase of the premises and the construction of their new home, into a home mortgage loan.

In October, 2005, on the basis of the defendant's alleged misrepresentation concerning the creation of

[8] The December 22, 2004 letter provided in relevant part: "I write this letter with some regret but, the fact that my earlier faxes to your office . . . have met with no response, requires that I advise you that your clients will not enjoy a right of way over my client's lot unless and until we have resolved the issue of a written easement agreement.

"I am sorry to have to take this position but the absence of any response whatsoever to my earlier attempts to resolve this matter leave me no other choice."

[9] In her deposition, Agnes Targonski stated that, based on her recollection, the defendant did not represent the plaintiffs in their August 25, 2005 purchase of additional property.

the right-of-way, the plaintiffs constructed a stone wall on that portion of Delahunty's adjacent property over which they believed that they had a right-of-way.[10]

On August 1, 2008, nearly three years after the plaintiffs finished building the stone wall, the defendant received a letter from Cronan claiming that it had been improperly constructed on Delahunty's property.[11] Upon receipt of the letter, the defendant for the first time informed the plaintiffs that they had no right-of-way over Delahunty's property and that she had a claim against them for unauthorized use of her property. On September 23, 2008, Cronan sent the defendant a letter, which the defendant subsequently forwarded to the plaintiffs, setting forth specific allegations of trespass and nuisance upon which Delahunty intended to seek injunctive relief against them. On September 29, 2008, the defendant finally sent Cronan a letter, in an unsuccessful attempt to resolve the alleged trespass and nuisance issues arising from the plaintiffs' use of Delahunty's property.[12] Thereafter, on October 2, 2008, to halt the plaintiffs' allegedly unauthorized use of her property, Delahunty, through Cronan, caused the plaintiffs to be served with an application for a temporary injunction and an order to show cause. Although the plaintiffs initially asked the defendant to represent them in connection with that matter, they later terminated his services upon discovering that he had failed to include the right-of-way in their deed.

On March 6, 2009, the plaintiffs filed the complaint in the present action against the defendant, claiming in relevant part that his conduct constituted negligence

[10] In 2007, believing that they owned the right-of-way, the plaintiffs paved a driveway over Delahunty's property.

[11] The August 1, 2008 letter was addressed to the defendant and referred to the plaintiffs as the defendant's clients.

[12] These communications between the defendant and Cronan, dated 2008, were marked as exhibits during the defendant's deposition and identified by him as documents he had received in 2008.

and negligent misrepresentation.[13] In their complaint, the plaintiffs alleged that the defendant, after negligently failing to include the right-of-way in their deed, engaged in a continuous course of conduct to prolong the harm flowing from his drafting error by failing to respond to Cronan's letters proposing to cure the defective deed by having them enter into an easement agreement with Delahunty.[14] The defendant, by way of special defense, alleged that § 52-577[15] barred the plaintiffs' claims against him because his representation of them with respect to their purchase of the premises had ended in July, 2004, more than three years before this action was commenced.[16]

On January 31, 2011, the defendant moved for summary judgment on the plaintiffs' claims against him,

[13] The plaintiffs' revised complaint, dated June 10, 2009, also alleged breach of fiduciary duty and breach of contract. On November 12, 2009, however, the court struck these counts and subsequently rendered judgment on them. They are not the subject of this appeal.

[14] In their complaint, the plaintiffs also alleged that the defendant continuously represented them until 2008.

[15] We note that the defendant's January 7, 2011 answer alleged that the plaintiffs' negligence and negligent misrepresentation counts were both barred by § 52-577. In his motion for summary judgment, however, the defendant claimed that § 52-577 barred the negligence count and General Statutes § 52-584 barred the negligent misrepresentation count. Section 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed." See footnote 18 of this opinion.

[16] In his answer to the plaintiffs' revised complaint, by way of special defenses, the defendant also alleged that the plaintiffs had failed to mitigate their damages and that their damages had resulted from their own negligence because they added improvements on Delahunty's property, which would have been unauthorized even if the right-of-way had been included in the deed.

arguing that those claims, as pleaded in the plaintiffs' complaint, were barred by the statute of limitations. In support of his motion, the defendant argued that the plaintiffs could not invoke the continuing representation doctrine to toll the statute of limitations for two reasons: first, that doctrine is limited in application to litigation matters; and second, the plaintiffs did not present evidence raising a genuine issue of material fact that the defendant continued to represent them in the same matter wherein he allegedly committed malpractice after the June 9, 2004 closing. The defendant addressed the plaintiffs' claim that the continuing course of conduct doctrine tolled the statute of limitations by arguing in a footnote that the doctrine is not applicable where, as alleged here, an attorney's negligence involved only the drafting of a document and subsequent failure to warn his clients about the consequences of such negligence.[17] The plaintiffs objected to the motion, arguing that the continuous representation and continuing course of conduct doctrines tolled the statute of limitations.

The plaintiffs were the only parties to submit evidence on the motion. Appended to their objection, such evidence included: (1) certified copies of excerpts from their own and the defendant's depositions in this case; (2) a copy of the 2004 purchase and sale agreement and deed; (3) copies of all written communications from Cronan to the defendant from November 9, 2004, through October 1, 2008; and (4) a copy of the defendant's letter to Cronan, dated September 29, 2008.

The court heard argument on the motion on April 4, 2011. The court subsequently granted the motion,

---

[17] As an alternate ground for granting his motion for summary judgment, the defendant also argued that his alleged negligence, even if true, did not cause the plaintiffs' damages because the unauthorized improvements at issue would have exceeded their use of Delahunty's property had the right-of-way been included in the deed.

rendering judgment in favor of the defendant in a memorandum of decision issued on July 18, 2011. With respect to the plaintiffs' claim under the continuous representation doctrine, the court ruled that, even if the defendant's later representation of the plaintiffs on their refinancing tolled the statute of limitations beyond the date of the defendant's initial drafting error in June, 2004, the defendant was entitled to summary judgment because there was no genuine issue of material fact that the defendant did not continue to represent the plaintiffs after the refinancing, which took place on September 20, 2005, more than three years before this action was commenced. With respect to the plaintiffs' claim under the continuing course of conduct doctrine, the court ruled that that doctrine did not toll the statute of limitations either because the defendant's alleged negligence had occurred only at and immediately after the June, 2004 closing, or because no evidence was presented to establish that the defendant owed the plaintiffs any continuing duty thereafter. The court thus concluded that the defendant was entitled to summary judgment because the plaintiffs commenced this action outside of the three year limitation period prescribed by § 52-577. After the court denied their ensuing motion for reconsideration and reargument on August 12, 2011, the plaintiffs filed this appeal.

"This court's review of a trial court's granting of a motion for summary judgment is plenary in nature. . . . Our task is to determine whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court

must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Lee* v. *Brenner, Saltzman & Wallman, LLP*, 128 Conn. App. 250, 254–55, 15 A.3d 1215, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011). "Summary judgment may be granted where the claim is barred by the statute of limitations." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, 128 Conn. App. 507, 512–13, 17 A.3d 509, cert. granted on other grounds, 302 Conn. 902, 23 A.3d 1242 (2011). "The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." (Internal quotation marks omitted.) *Lee* v. *Brenner, Saltzman & Wallman, LLP*, supra, 255.

"Although allowing a statute of limitations defense may result in meritorious claims being foreclosed, that must be so. A statute of limitations promotes two important interests: (1) it reflects a policy of law, as declared by the legislature, that after a given length of time a [defendant] should be sheltered from liability and furthers the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . and (2) to avoid the difficulty in proof and record keeping which suits involving older [claims] impose." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, supra, 128 Conn. App. 513.

The claims underlying the plaintiffs' present action were based on negligence, and thus were subject to the three year limitation period set forth in § 52-577.[18] "This

---

[18] The parties disagree as to what statute of limitations applies to the negligent misrepresentation claim. Although the defendant claims that General Statutes § 52-584, which has a two year statute of limitations, applies to this claim, this court has held that "[a]ctions for legal malpractice based

court has determined that [§] 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. . . . Moreover, our Supreme Court has stated that [i]n construing our general tort statute of limitations, General Statutes § 52-577, which allows an action to be brought within three years from the date of the act or omission complained of, we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. . . . The three year limitation period of § 52-577, therefore, begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Internal quotation marks omitted.) *Piteo* v. *Gottier*, 112 Conn. App. 441, 445, 963 A.2d 83 (2009).

Here, the defendant's alleged acts and omissions at and immediately after the June 9, 2004 closing triggered the statute of limitations. The trial court found that the plaintiffs did not commence this action until February 26, 2009, which was outside of the three year limitation period prescribed by § 52-577. Accordingly, because more than three years had passed since the date of the defendant's alleged negligence before the plaintiffs served their complaint, the plaintiffs' claims can survive the defendant's challenge under the statute of limitations only if the statute was tolled before the limitation period expired.

On appeal, the plaintiffs claim that there is a genuine issue of material fact as to whether the statute of limitations was tolled in this case by the continuing course

on negligence are subject to § 52-577, the tort statute of limitations." (Internal quotation marks omitted.) *Weiner* v. *Clinton*, 106 Conn. App. 379, 386, 942 A.2d 469 (2008). The defendant did plead, however, that the plaintiffs' action was barred by § 52-577.

of conduct doctrine. Specifically, the plaintiffs argue that the defendant breached a continuing duty owed to them when, after engaging in his initial negligent conduct, he learned of the error in the deed but failed to take action to correct it despite having the opportunity to do so. We agree.

"The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo. . . . The issue, however, of whether a party engaged in a continuous course of conduct that tolled the running of the statute of limitations is a mixed question of law and fact. . . . We defer to the trial court's findings of fact unless they are clearly erroneous." (Internal quotation marks omitted.) *Lee* v. *Brenner, Saltzman & Wallman, LLP*, supra, 128 Conn. App. 256–57.

Section 52-577 "is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues. . . . Nonetheless, [w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed." (Internal quotation marks omitted.) *Vanliner Ins. Co.* v. *Fay*, 98 Conn. App. 125, 139–40, 907 A.2d 1220 (2006).

"[I]n order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong . . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing

duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) *Watts* v. *Chittenden,* 301 Conn. 575, 584, 22 A.3d 1214 (2011). "Therefore, a precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff." (Internal quotation marks omitted.) Id., 585. "A second requirement for the operation of the continuing course of conduct doctrine is that there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto." (Internal quotation marks omitted.) Id. "The doctrine of continuing course of conduct as used to toll a statute of limitations is better suited to claims where the situation keeps evolving after the act complained of is complete . . . ." *Sanborn* v. *Greenwald,* 39 Conn. App. 289, 297–98, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995).

Here, the parties agree that the allegations of the plaintiffs' complaint are sufficient to state a claim of legal malpractice based upon the defendant's negligent drafting of the deed without providing for a right-of-way over the seller's property. They also agree that the plaintiffs commenced this action more than three years after the alleged malpractice was committed. Accordingly, the plaintiffs' appeal turns on our resolution of the second element of the continuing course of conduct doctrine, to wit: whether the defendant, by his conduct after the alleged malpractice, breached a continuing duty to the plaintiffs that was related to his initial wrong.

As general matter, once the attorney-client relationship ends, the prior representation does not give rise to any continuing duty. Id., 297. Thus, in *Sanborn,* this court held that "[t]here is no tolling of statutes of limitations in either tort or contract actions for the failure of an attorney to tell a client that a document drafted by the attorney could be inaccurate because, once the

representation of the client is complete and the document executed, any warning would be ineffective." Id. In that case, however, this court, in deciding not to apply the continuing course of conduct doctrine, explained that no duty existed between an attorney and a client after the attorney negligently drafted a document *because the client did not offer evidence that (1) the attorney subsequently learned that his drafting was negligent; (2) the attorney was capable of remedying any problems associated with the negligent drafting; and (3) any warning from the defendant to the plaintiff would be effective.* Id. The clear implication of this holding is that even after an attorney's representation of a client ends, he owes a duty to his client, which relates back to his original wrong of rendering negligent services to the client, to correct the results of such prior negligence if he later learns of the negligence at a time when he has the power to remedy the problems arising from it. See *Haas* v. *Haas*, 137 Conn. App. 424, 433, 48 A.3d 713 (2012) ("continuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct" [internal quotation marks omitted]). By force of simple logic, this duty continues until such time as he takes action to cure his prior negligence or the opportunity to cure such prior negligence ceases to exist.

Here, then, if the trial court received competent evidence tending to show that, after negligently failing to include the right-of-way in the deed, the defendant learned of his negligence but failed to correct it when he had the opportunity to do so, it should have denied the defendant's motion for summary judgment if the evidence also showed that his opportunity to correct the negligence extended to a point less than three years before the commencement of this action.

In the present case, the plaintiffs in fact have presented evidence, in the form of written communications between the defendant and Cronan, tending to establish

that, upon learning of his earlier negligence in drafting the deed, the defendant breached an ongoing duty to the plaintiffs to correct his prior error at a time when he had the opportunity to do so. Specifically, the evidence shows that, after the June 9, 2004 closing, Cronan notified the defendant of his drafting error on multiple occasions and also advised him that his error could be rectified by having his clients, the plaintiffs, enter into an easement agreement with Delahunty. Because this offer was not withdrawn until Delahunty filed suit against the plaintiffs to enjoin their further use of the driveway in 2008, the defendant's opportunity to cure his negligence lasted until well within three years of the commencement of this action. The defendant's failure to inform the plaintiffs of the defects in their deed or of their opportunity to cure them, by the process suggested by Cronan or otherwise, constituted later wrongful conduct in violation of a continuing duty related to the defendant's original breach.[19] See *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 296 (in cases in which continuing course of conduct doctrine applied to toll statute of limitations, "the plaintiff's injury was perpetuated, enhanced and even caused by the breach of a [continuing] duty on the part of the defendant").

On appeal, the defendant argues that the letter and faxes from Cronan to the defendant are unauthenticated

---

[19] As an alternative to entering into an easement agreement with Delahunty, as suggested by Cronan, the plaintiffs could have sought to enforce the written purchase and sale agreement that the parties had signed prior to the closing, on which the statute of limitations would not have expired until April 18, 2010. See General Statutes § 52-576 (a) ("[n]o action . . . on any contract in writing, shall be brought but within six years after the right of action accrues"); *American Express Centurion Bank* v. *Head*, 115 Conn. App. 10, 15–16, 971 A.2d 90 (2009) ("[t]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages" [internal quotation marks omitted]); see also *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 799, 17 A.3d 40 (2011) ("[u]nder the doctrine of equitable conversion a contract for the sale of land vests equitable title in the vendee" [internal quotation marks omitted]).

and inadmissible, and thus cannot be considered by the court. Without such evidence, he further argues, there was no competent proof before the trial court that the challenged communications, even if written in 2004, were ever received by the defendant in that time frame, thus giving rise to a continuing duty on his part to correct his prior negligence in drafting the deed while there was an opportunity to do so. We disagree.

Before a document may be considered by the court in opposition to a motion for summary judgment, the proponent need only advance "evidence sufficient to support a finding" that the proffered evidence is what it is claimed to be. Conn. Code Evid. § 9-1 (a). A writing may be authenticated by an admission of the opposing party at a deposition. See id., commentary (a) (7); C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 9.2.1, pp. 621–22. Here, appended to their opposition to the defendant's motion for summary judgment, the plaintiffs submitted a certified copy of the deposition of the defendant during which the defendant identified a letter and two faxes he had received from Cronan in 2004.[20] Specifically, during his deposition, the defendant

[20] The following is a transcript of the relevant portions of the defendant's deposition:

"Q. Do you recall ever, back in 2004 to August of 2005, explaining to the [plaintiffs] that, in fact, they would not be receiving a right-of-way or an easement over this area that they expected?

"A. No, I do not.

"Q. Do you recall any correspondence at all from attorney Cronan indicating that that would not be forthcoming?

"A. There was some faxes from attorney Cronan.

"Q. And when were those—I'm looking at the next correspondence, which is September 23 [2008]. Is that the correspondence that you're referring to? . . .

"A. No. There would be a 2004 correspondence. They're in there. . . .

"Q. I have a September 23, 2008 correspondence. Then the next one is September 29, 2008. Then there's a correspondence dated October 1, 2008.

"A. I believe there's some attachments to that.

"Q. All right. There is a December 22, 2004 correspondence to you, a December 7, 2004 correspondence and [a November 4, 2004]. Those three correspondences are all after the purchase of the property?

"A. Correct."

testified that, in 2004, Cronan had notified him in writing that the plaintiffs "would not be receiving a right-of-way or an easement over [Delahunty's property] that they expected . . . ." The defendant's testimony at his deposition thus operated not only to authenticate the proffered letter and faxes, but also to establish that he had received them in 2004. The plaintiffs thus have presented competent evidence tending to establish that the defendant breached a continuing duty, which he owed the plaintiffs, to apprise them of his negligence in drafting the deed and cure the problems resulting from it while the opportunity to do so existed, that lasted until within three years of the plaintiffs' commencement of this action. We thus conclude that it was improper for the trial court to have found, as a matter of law, that § 52-577 was not tolled by the defendant's failure to cure his own negligence under the continuing course of conduct doctrine.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.