******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NORCOTT, J., with whom EVELEIGH and ESPINOSA, Js., join, dissenting. I respectfully disagree with part II of the majority's opinion,[1] which concludes that the claims of the plaintiff, John D. Flanery,[2] alleging that the defendant, Singer Asset Finance Company, LLC,[3] aided and abetted the plaintiff's attorney in the breach of his fiduciary duty and violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., were time barred on the admitted or undisputed facts of this case. Accordingly, the majority affirms the judgment of the Appellate Court upholding the trial court's grant of the defendant's motion for summary judgment. See *Flannery* v. *Singer Asset Finance Co., LLC*, 128 Conn. App. 507, 518, 17 A.3d 509 (2011). In my view, the plaintiff adduced sufficient evidence to raise a genuine issue of material fact that the continuing course of conduct doctrine was available to toll the statute of limitations because: (1) that doctrine tolled the running of the applicable three year statute of limitations, General Statutes § 52-577,[4] against Glenn MacGrady, the attorney who had breached his fiduciary duties while representing the plaintiff during the sale of his lottery winnings to the defendant in exchange for a lump sum payment; and (2) the defendant had aided and abetted MacGrady's breach of that fiduciary duty, thereby rendering the continuing course of conduct toll applicable to the aiding and abetting claims against the defendant. I further agree with the plaintiff that the Appellate Court improperly relied on this court's decision in *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 541 A.2d 472 (1988), to conclude that, as a matter of law, the continuing course of conduct doctrine does not apply to the three year CUTPA statute of limitations, General Statutes § 42-110g (f).[5] Because the plaintiff is entitled to a trial on these issues, I would reverse the judgment of the Appellate Court holding to the contrary. Accordingly, I respectfully dissent.

I

AIDING AND ABETTING CLAIMS

I begin by noting my agreement with the majority's statement of the relevant facts and procedural history, which I need not repeat here. By way of background, the defendant claims that the continuing course of conduct doctrine is inapplicable because it individually did not engage in any subsequent acts with respect to the plaintiff after the closing of the lottery winnings sale in September, 1999, and, further, lacked the requisite "special relationship" with him, in contrast to his fiduciary attorney-client relationship with MacGrady, the attorney who represented the plaintiff during the transaction. Relying heavily on a New York decision, *Kaufman* v. *Cohen*, 307 App. Div. 2d 113, 760 N.Y.S.2d 157 (2003),

the defendant contends that the attorney-client fiduciary relationship between MacGrady and the plaintiff should not be attributed to it for purposes of tolling the statute of limitations, despite the derivative nature of the plaintiff's aiding and abetting claim against the defendant. Finally, the defendant contends that, even if the fiduciary relationship between MacGrady and the plaintiff is attributed to it as an aider and abettor, under *Lee* v. *Brenner, Saltzman & Wallman, LLP*, 128 Conn. App. 250, 15 A.3d 1215, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011), and *Sanborn* v. *Greenwald*, 39 Conn. App. 289, 664 A.2d 803, cert. denied, 235 Conn. 925, 666 A.2d 1186 (1995), the attorney-client relationship between MacGrady and the plaintiff ended after the closing of the sale in 1999, and MacGrady's act of referring the plaintiff to another attorney for defense following the issuance of a tax deficiency by the Internal Revenue Service (IRS) in 2002 did not constitute a continuing course of conduct for purposes of tolling the statute of limitations.

In response, the plaintiff relies upon *Anderson* v. *Pine South Capital, LLC*, 177 F. Supp. 2d 591, 604 (W.D. Ky. 2001), for his argument that "the liability of one who aids and abets a fiduciary in breaching their fiduciary duty is not only derivative of the fiduciary's duty, but also coextensive with the liability of the fiduciary, including as to the application of limitations defenses." In his reply brief, the plaintiff then contends that the New York decision in *Kaufman* is factually distinguishable and, further, stands for the proposition that, because the plaintiffs' allegations in that case against the aiders and abettors "were insufficient to support the claim that . . . [they] actively support[ed] [the fiduciary's] scheme, the only way that limitations could be tolled as to those defendants would be if they owed independent and direct fiduciary duties to the plaintiffs," similar to the fiduciary. The plaintiff then cites evidence in the record to contrast with *Kaufman*, including the defendant's telephone logs and sales notes documenting the defendant's attempt to woo the plaintiff, which demonstrates the defendant's active role in aiding and abetting MacGrady's breach of his fiduciary duty, thereby rendering MacGrady's continuous course of conduct during and after the legal representation attributable to the defendant. The plaintiff further cites the deposition testimony of Stephen Hazard, the managing partner of Pepe & Hazard, LLP (Pepe & Hazard), MacGrady's employer, and rule 1.7 of the Rules of Professional Conduct,[6] in support of the proposition that MacGrady's unsatisfied obligation to disclose his conflict of interest continued indefinitely past the conclusion of his retained representation of the plaintiff, which created a continuing duty under which the statute of limitations was extended as to MacGrady; that extension was imputed to the defendant. I agree with the plaintiff, and conclude that there is sufficient evidence

to create a genuine issue of material fact as to whether the continuous course of conduct doctrine tolled the running of the statute of limitations on his claim that the defendant had aided and abetted the breach of a fiduciary duty owed to him by MacGrady, his attorney.

## A

### Background Legal Principles

In the context of the summary judgment motion that forms the basis for this appeal, the "question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." (Internal quotation marks omitted.) *Watts* v. *Chittenden*, 301 Conn. 575, 582, 22 A.3d 1214 (2011). Beyond the well established general standard for granting summary judgment; see, e.g., *Zielinski* v. *Kotsoris*, 279 Conn. 312, 318–19, 901 A.2d 1207 (2006); as the majority aptly notes, this court has recently held that, "in the context of a motion for summary judgment based on a statute of limitations special defense, a defendant typically meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the plaintiff asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute." (Citation omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 321, 77 A.3d 726 (2013).

The statute of limitations issue in this appeal is informed by the derivative nature of the plaintiff's claim that the defendant aided and abetted MacGrady in the breach of his fiduciary duty; the viability of the aiding and abetting claim is intertwined with that of the underlying cause of action. See, e.g., *Efthimiou* v. *Smith*, 268 Conn. 499, 504–505, 846 A.2d 222 (2004) (concluding in aiding and abetting case that plaintiffs were collaterally estopped from relitigating underlying finding in related case with respect to breach of fiduciary duty). In *Efthimiou*, this court quoted *Halberstam* v. *Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983), for the elements of the aiding and abetting tort, namely: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation . . . ." (Internal quotation marks omitted.) *Efthimiou* v. *Smith*, supra, 505.

Because of the derivative nature of the cause of action, if the underlying claim for aiding and abetting the breach of a fiduciary duty is time barred by the statute of limitations, then the derivative aiding and abetting claim will be time barred as well. See, e.g.,

*Anderson* v. *Pine South Capital, LLC*, supra, 177 F. Supp. 2d 604 ("we hold that the statute of limitations for a charge of aiding and abetting should fall under the section reserved for the underlying cause of action which, in the present case, has not yet expired"); *Kaufman* v. *Cohen*, supra, 307 App. Div. 2d 124–25 (reviewing aiding and abetting claims to determine whether they specifically are time barred because appellate court's determination that "primary breach of fiduciary duty causes of action . . . are indeed viable . . . vitiates the [trial] court's holding that the derivative claims [for aiding and abetting] should be dismissed"); cf. *Stokes* v. *Southeast Hotel Properties, Ltd.*, 877 F. Supp. 986, 1001 (W.D.N.C. 1994) (concluding that loss of consortium claim was time barred under North Carolina law because it was derivative of time barred wrongful death claim); *Hinson* v. *Owens-Illinois, Inc.*, 677 F. Supp. 406, 407 n.1 (D.S.C. 1987) ("because [the husband's] cause of action is barred by the statute of limitations . . . [the wife's] cause of action [for loss of consortium] must also fail" [citations omitted]).

In this vein, the present appeal presents the question of whether a claim could be time barred as to the aider and abettor if not necessarily time barred as to the principal actor. Thus, I note that the "parties in the present case do not dispute that the plaintiff's claim is governed by the tort statute of limitations set forth in . . . § 52-577. Section 52-577 provides: No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of. In construing our general tort statute of limitations . . . we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. . . . The date of the act or omission complained of is the date when the . . . conduct of the defendant occurs . . . ." (Citation omitted; internal quotation marks omitted.) *Watts* v. *Chittenden*, supra, 301 Conn. 582–83.

As the majority recognizes, the harsh effects of the occurrence nature of § 52-577 may, however, be mitigated by the application of certain tolling doctrines, including the continuing course of conduct doctrine. "This court has recognized the continuing course of conduct doctrine in many cases involving claims sounding in negligence. For instance, we have recognized the continuing course of conduct doctrine in claims of medical malpractice. . . . In doing so, we noted that [t]he continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied. . . . The continuing course of conduct doctrine has also been applied to other claims of professional negli-

gence in this state. . . .

"In these negligence actions, this court has held that in order [t]o support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. . . .

"[A] precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff. . . .

"A second requirement for the operation of the continuing course of conduct doctrine is that there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. . . . This court has held this requirement to be satisfied when there was wrongful conduct of a defendant related to the prior act." (Citations omitted; internal quotation marks omitted.) Id., 583–85. "[C]ontinuing wrongful conduct may include acts of omission as well as affirmative acts of misconduct . . . ." (Internal quotation marks omitted.) *Sherwood* v. *Danbury Hospital*, 252 Conn. 193, 205, 746 A.2d 730 (2000). The effect of the continuing course of conduct doctrine is to delay the commencement of the running of the statute of limitations. See, e.g., *Handler* v. *Remington Arms Co.*, 144 Conn. 316, 321, 130 A.2d 793 (1957) ("[w]hen the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed").

Given the paucity of case law from Connecticut or elsewhere discussing the application of tolling doctrines to otherwise time barred claims of aiding and abetting a breach of a fiduciary duty, I begin my analysis with *Kaufman* v. *Cohen*, supra, 307 App. Div. 2d 113, upon which both parties heavily rely. *Kaufman* concerned, inter alia, whether any of New York's tolling doctrines applied to save the plaintiffs' otherwise time barred aiding and abetting a breach of a fiduciary duty claim against the "Falchi defendants," who had secret dealings with the defendant, Irwin B. Cohen, the plaintiffs' former business partner, to reacquire a foreclosed real estate investment property formerly held by the plaintiffs and Cohen. Id., 125–27. As the defendant argues, the court in *Kaufman* held that the continuing course of conduct doctrine will toll the statute of limitations on an aiding and abetting claim when the aider and abettor has its own fiduciary relationship with the

plaintiff *and* the principal actor engages in a continuing course of conduct, namely because the aider and abettor with a fiduciary duty has an ongoing duty to disclose material facts. Id., 126–27; accord *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 107, 912 A.2d 1019 (2007) ("although fraudulent concealment generally requires an affirmative act of concealment, nondisclosure is sufficient when the defendant has a fiduciary duty to disclose material facts" [internal quotation marks omitted]). The plaintiff does not dispute the defendant's contention that no such independent fiduciary relationship existed here between it and the plaintiff, as they were simply buyer and seller. See, e.g., *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 210 (vendor-vendee "relationship does not give rise to obligations equivalent to those of a fiduciary").

That the plaintiff lacked an independent fiduciary relationship with the defendant in this case is not, however, fatal to his attempt to toll the statute of limitations against the defendant. I agree with the plaintiff that *Kaufman* also stands for the proposition that, in the absence of an independent fiduciary relationship between the plaintiff and the aider and abettor, as is the case here, the merits of the aiding and abetting claims significantly inform whether the statute of limitations should be tolled. See *Kaufman* v. *Cohen*, supra, 307 App. Div. 2d 125–27; see also *Ingham ex rel. Cobalt Asset Management, L.P.* v. *Thompson*, 88 App. Div. 3d 607, 608–609, 931 N.Y.S.2d 306 (2011) (aiding and abetting breach of fiduciary duty claim barred by statute of limitations when defendant, who entered into agreement with plaintiff's former business partner, did not make any affirmative representations or have fiduciary duty directly to plaintiff, and no evidence that defendant had reason to believe it was acting wrongfully at time of transaction with plaintiff's former business partner); *Monaghan* v. *Ford Motor Co.*, 71 App. Div. 3d 848, 850, 897 N.Y.S.2d 482 (2010) (concluding that aiding and abetting fiduciary duty claim should not have been dismissed as time barred because underlying claim was timely, but then considering merits of aiding and abetting claim). Thus, put differently, the court must determine whether aiding and abetting actually occurred rather than automatically applying any tolling doctrine applicable to the principal actor to the alleged aider and abettor; if that aiding and abetting occurred, then a tolling doctrine applicable to the principal actor would apply to the aider and abettor. This rule is consistent with the derivative nature and elements of the aiding and abetting tort, specifically, those of knowledge and substantial assistance.[7] See *Efthimiou* v. *Smith*, supra, 268 Conn. 505. Thus, I first examine whether the defendant engaged in aiding and abetting, before determining whether the record supports the application of a tolling doctrine against the principal actor, in this case, MacGrady.

B

## Whether the Defendant Aided and Abetted MacGrady's Breach

Thus, I turn to the record before the trial court in deciding the summary judgment motion to determine whether the pleadings and evidence in the present case demonstrated a genuine issue of material fact as to whether the defendant aided and abetted MacGrady's breach of his fiduciary duty to the plaintiff. As noted previously, "[a]iding-abetting includes the following elements: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation. . . ." (Internal quotation marks omitted.) Id.

Viewing the evidence in the light most favorable to the plaintiff, as the non-moving party, I conclude first that the plaintiff has established a genuine issue of material fact as to whether the defendant engaged in aiding and abetting. The record in this case reveals a scheme wherein the defendant furthered its own business interests by utilizing the purportedly independent MacGrady as, in essence, an arm of its sales force, thereby knowingly and substantially assisting in the breach of MacGrady's fiduciary duty to his client, the plaintiff. Telephone records indicate that, from January, 1999, through September, 1999, Craig Wallace, one of the defendant's sales representatives, used the prospect of long-term capital gains taxation of the plaintiff's annuitized lottery winnings to persuade the plaintiff to sell those winnings to the defendant in exchange for a lump sum. Wallace referred the plaintiff to MacGrady for expert advice in treating the proceeds from the sale as long-term capital gains, which was a tax advantage that proved pivotal in persuading the plaintiff to sell his annuitized winnings to the defendant. Having no idea that there was a simultaneous business relationship between MacGrady and the defendant, wherein MacGrady ultimately would be retained to write and speak on the defendant's behalf to convince lottery winners to sell their winnings, and be eligible for "performance bonus[es]" for being a "significant contributing factor" in closing a sale, the plaintiff retained MacGrady to represent him in the "matter of selling [his] lottery winnings." Further, the telephone sales logs demonstrate that Wallace was in constant communication with MacGrady until the closing of the sale, directing him, for example, to speak to the plaintiff's accountant on the "tax angle" and updating him on the status of competing offers from other lottery sales companies. Finally, the defendant had actual notice of the tortious nature of the scheme and its attendant conflicts of interest by Pepe & Hazard's retainer

agreement signed and furnished by MacGrady, which provided that the defendant would waive any and all conflicts of interests created by the Pepe & Hazard's representation of the plaintiff.

In sum, the evidence establishes, at least a genuine issue of material fact, that the defendant was no mere bystander to MacGrady's breach of his fiduciary duty, but actively created and fostered the environment that was ripe for that breach by, in essence, using MacGrady as part of its sales force to encourage the plaintiff to sell his lottery winnings. I conclude, therefore, that a finder of fact reasonably could find that these actions by the defendant constituted: (1) an awareness in a scheme of illegal or tortious activity intended to gain an advantage over the plaintiff and induce him to sell his lottery winnings; and (2) knowing and substantial assistance in MacGrady's breach of his fiduciary duty.

C

Whether the Continuing Course of Conduct Doctrine Tolls the Statute of Limitations as to MacGrady

Having established that the defendant engaged in the requisite aiding and abetting, I now turn to whether there is a genuine issue of material fact about whether the continuing course of conduct doctrine tolls the statute of limitations as to MacGrady. With respect to the elements of the continuing course of conduct doctrine; see *Watts* v. *Chittenden*, supra, 301 Conn. 583–85; I first note that it is undisputed that MacGrady, as the plaintiff's attorney, owed him a fiduciary duty of loyalty, which he breached through his conflict of interest occasioned by his simultaneous representation of the defendant. I part company from the majority, though, with respect to the related continuing wrongful conduct. In my view, MacGrady extended that breach by representing to the plaintiff in 1999 that he would be available in the future to represent him if any problem developed with the IRS in connection with the tax treatment of the sale proceeds. In doing so, MacGrady cultivated his fiduciary relationship with the plaintiff and provided the assurances necessary to encourage the plaintiff to move forward with the sale, despite the ongoing concerns of his tax accountant. Thus, MacGrady's response to the plaintiff's call in 2002, after the plaintiff had received an IRS deficiency notice, in which he referred the plaintiff to a legal defense group for other lottery winnings sellers, had the effect of continuing the course of conduct started in 1999. This is particularly so given that MacGrady took a referral fee from Eric Granitur, the attorney coordinating that defense group, thus allowing MacGrady to profit again from his role in the scheme that had facilitated the sale of the plaintiff's lottery winnings to the defendant. Thus, I would conclude that this action was timely because it was filed less than three years after MacGrady's referral of the case to, and acceptance of a fee from, Granitur in 2002.

Citing legal malpractice case law, however, namely, *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 795 A.2d 572 (2002), *Lee* v. *Brenner, Saltzman & Wallman, LLP*, supra, 128 Conn. App. 250, and *Sanborn* v. *Greenwald*, supra, 39 Conn. App. 289, the defendant contends, and the majority holds that MacGrady's breach of his fiduciary duties concluded in 1999 with the completion of the sale for which he had been retained, and that the continuing course of conduct doctrine is inapplicable because the legal situation was no longer evolving thereafter. In particular, the defendant quotes *Sanborn* for the proposition that, "[t]here is no tolling of statutes of limitations in either tort or contract actions for the failure of an attorney to tell a client that a document drafted by the attorney could be inaccurate because, once the representation of the client is complete and the document executed, any warning would be ineffective. . . . The doctrine of continuing course of conduct as used to toll a statute of limitations is better suited to claims where the situation keeps evolving after the act complained of is complete, such as medical malpractice, rather than one where the situation cannot change, such as legal malpractice arising from negligent drafting of the written word." (Citation omitted.) *Sanborn* v. *Greenwald*, supra, 297–98. Thus, the defendant and the majority emphasize that, under the retainer agreement, MacGrady's representation of the plaintiff ceased in June, 1999, and argues that MacGrady's "brief, fleeting contact with [the plaintiff] in October, 2002, was not 'legal or fiduciary representation' . . . ."

I disagree with the majority's application of these legal malpractice cases in the context of this case, which raises a distinct claim of breach of fiduciary duty of loyalty rather than a claim that MacGrady's representation was legal malpractice because it fell below the applicable standard of care. "[P]rofessional negligence alone . . . does not give rise automatically to a claim for breach of fiduciary duty. . . . [Thus] not every instance of professional negligence results in a breach of [a] fiduciary duty. . . . Professional negligence implicates a duty of care, while breach of a fiduciary duty implicates a duty of loyalty and honesty." (Internal quotation marks omitted.) *Sherwood* v. *Danbury Hospital*, 278 Conn. 163, 196, 896 A.2d 777 (2006); see also *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 56–57, 717 A.2d 724 (1998) (concluding that legal malpractice committed by law firm's junior associate was not breach of fiduciary duty because "it cannot be said that [the associate] represented that she had superior knowledge, skill or expertise in the field of franchising, nor that she sought the plaintiff's special trust"); *Mangiante* v. *Niemiec*, 82 Conn. App. 277, 284, 843 A.2d 656 (2004) ("[t]he fiduciary duty of loyalty is breached when the fiduciary engages in self-dealing by using the fiduciary relation-

ship to benefit her personal interest"). Thus, tolling analyses predicated on legal malpractice in the performance of discrete tasks should not dictate this court's conclusion vis-a-vis breach of fiduciary duty.

Put differently, and setting aside the substantive merit of MacGrady's tax advice, his statement in 1999 that he would assist the plaintiff were he to run into tax trouble with the IRS in the future operated to cultivate the very fiduciary relationship that he ultimately breached with his conflict of interest; this had the effect of creating a continuing course of conduct that extended the statute of limitations in this case. See *Giulietti* v. *Giulietti,* 65 Conn. App. 813, 835–36, 784 A.2d 905 (continuing course of conduct tolled statute of limitations when defendant attorney prepared deeds and escrow agreements subject to conditions not specified by his father/client, and parties had continuing relationship wherein attorney continued to serve as general counsel for his family's business without taking "steps necessary to effectuate his father's wishes regarding the property distribution," which was omission that "related directly back to [the] attorney['s] . . . earlier wrongs"), cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001); cf. *Targonski* v. *Clebowicz*, 142 Conn. App. 97, 110–11, 63 A.3d 1001 (2013) (following *Sanborn* and concluding that "even after an attorney's representation of a client ends, he owes a duty to his client, which relates back to his original wrong of rendering negligent services to the client, to correct the results of such prior negligence if he later learns of the negligence at a time when he has the power to remedy the problems arising from it," and continuous course of conduct doctrine tolled statute of limitations when defendant repeatedly acquired that knowledge and failed to act during limitations period to correct errors). The plaintiff returning to MacGrady for assistance in October, 2002, was, then, a natural consequence of that 1999 statement, coupled with MacGrady's continuing failure to disclose his conflict of interest in violation of rule 1.7 of the Rules of Professional Conduct. See footnote 9 of this dissenting opinion.

To this end, I disagree with the majority's reliance on our recent decision in *Watts* v. *Chittenden*, supra, 301 Conn. 575, in support of the proposition that the continuing course of conduct doctrine is unavailable because of the more than three year gap between the closing of the sale in September, 1999, and MacGrady's referral of the plaintiff to the tax defense group in October, 2002.[8] As the majority accurately observes, in *Watts*, this court held that, "if no conduct has occurred within the three year limitations period set forth in § 52-577, the plaintiff will be barred from recovering for the prior actions of intentional infliction of emotional distress. If, however, additional actions occur within the limitations period, the ability to bring an action will be further extended." Id., 596; see also id., 597–98 (continuing

course of conduct doctrine applied to toll statute of limitations when defendant made repeated false accusations of sexual abuse against plaintiff, and "[a]t no time . . . was there a gap of three years between the reports of sexual abuse reported by the defendant against the plaintiff").

In my view, applying the continuous course of conduct doctrine to toll the running of § 52-577 in the present case is wholly consistent with *Watts*, which involved intentional infliction of emotional distress, a tort of *commission*; the acts at issue, multiple false accusations of child sexual abuse, were discrete and identifiable. In contrast, this case involves an underlying tort of *omission*, namely, the breach of a fiduciary duty predicated on MacGrady's continued failure to inform the plaintiff of the conflict of interest created by his relationship with the defendant. Indeed, MacGrady's failure to satisfy this fiduciary duty, which it is undisputed, survived the termination of the formal attorney-client relationship with the closing of the lottery sale in 1999,[9] continued throughout the three year statutory limitations period. Thus, our holding in *Watts*, which by its language applies only to the tort of intentional infliction of emotional distress, is distinguishable from the present case. See *Haas* v. *Haas*, 137 Conn. App. 424, 427, 433–34, 48 A.3d 713 (2012) (continuing course of conduct tolled § 52-577, despite plaintiff's failure to file action for four years after her discovery that defendant, her accountant son, had failed to file her tax returns, which occurred five years after last failure, because of trial court's "pivotal . . . finding that the defendant's duty to the plaintiff was prolonged by the defendant's active concealment and withholding of documents and information relating to his initial failure to file the plaintiff's taxes"); cf. *Lake Road Trust, Ltd.* v. *ABB, Inc.*, Superior Court, judicial district of Hartford, Docket No. X04-CV-10-6016502-S (May 17, 2012) (contractor's failure to disclose conflict of interest or earlier misrepresentation not continuing conduct that would toll statute of limitations because absent "fiduciary obligation" or "a special relationship, the defendant had no duty to disclose its lack of candor with the plaintiffs").

Accordingly, I would reject the defendant's alternate ground for affirmance, and conclude that there is a genuine issue of material fact with respect to whether the continuing course of conduct doctrine operated to toll the statute of limitations on the plaintiff's aiding and abetting claims.

## II

### CUTPA CLAIMS

Because I conclude that the continuing course of conduct doctrine operated to toll the statute of limitations on the plaintiff's aiding and abetting claims, I must reach the plaintiff's claim that the Appellate Court

improperly determined that, under this court's decision in *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 216–17, the continuing course of conduct doctrine is inapplicable, as a matter of law, to the statute of limitations governing CUTPA claims set forth in § 42-110g (f).[10] See *Flannery* v. *Singer Asset Finance Co.*, *LLC*, supra, 128 Conn. App. 514. The plaintiff argues that *Fichera* simply concluded that the plaintiff therein had not established entitlement to the continuing course of conduct doctrine on the facts of that case—"not that the doctrine could not be applied to CUTPA under any facts"—and that the broader holding in *Fichera* was that fraudulent concealment under General Statutes § 52-595 could not be applied to " 'self-concealing fraud[s]' " that are actionable under CUTPA. The defendant does not defend the Appellate Court's reading of *Fichera* at length, candidly acknowledging that this court "never specifically stated [therein] that the continuing course of conduct doctrine does not toll the CUTPA statute of limitations," but calls the Appellate Court's reasoning "sound, logical and correct" and considers the alleged conduct in this case to be akin to the fraudulent concealment that this court held in *Fichera* did not toll the statute of limitations. I agree with the plaintiff, and conclude that the continuing course of conduct doctrine is available to toll the statute of limitations under CUTPA, and that the Appellate Court improperly read *Fichera* as holding to the contrary.

I begin by noting that the plaintiff's claim constitutes a matter of statutory interpretation; see General Statutes § 1-2z; in the context of our previous decisions applying and interpreting § 42-110g (f). See, e.g., *New England Road*, *Inc.* v. *Planning & Zoning Commission*, 308 Conn. 180, 186, 61 A.3d 505 (2013) ("in interpreting the language of [General Statutes] § 52-72, we do not write on a clean slate, but are bound by our previous judicial interpretations of this language and the purpose of the statute"); *Hummel* v. *Marten Transport*, *Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007) ("[t]here is nothing in the legislative history to suggest that the legislature also intended to overrule every other case in which our courts, prior to the passage of § 1-2z, had interpreted a statute in a manner inconsistent with the plain meaning rule, as that rule is articulated in § 1-2z"). This is a question of law over which our review is plenary. See, e.g., *HVT*, *Inc.* v. *Law*, 300 Conn. 623, 629, 16 A.3d 686 (2011).

I begin with a review of *Fichera*, wherein this court concluded that the plaintiffs' CUTPA claims arising from the defendants' failure to construct recreational facilities promised to purchasers in a residential development were time barred under § 42-110g (f), which is the three year statute of limitations that governs CUTPA claims. See *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 205–208. In *Fichera*, this court first concluded that § 42-110g (f) is an occurrence statute like § 52-577, and that

"[u]nlike the statutes of limitation of some other states applicable to unfair trade practices legislation analogous to our CUTPA, which expressly allow a certain period following the discovery of the deceptive practice for commencing suit . . . § 42-110g (f) provides only that an action must be brought within three years 'after the occurrence of a violation of this chapter.'" (Citations omitted.) Id., 212. After determining that, on the record in that case, the plaintiffs were not entitled to toll the statute of limitations using the continuing course of conduct doctrine the court then noted that the plaintiffs, in avoidance of the defendants' statute of limitations defense, had "pleaded facts purporting to show that the defendants had fraudulently concealed from them the existence of their CUTPA cause of action and thus invoked the benefit of . . . § 52-595." Id., 213. Noting that this "court has not yet decided whether affirmative acts of concealment are always necessary to satisfy the requirements of § 52-595" the court described the defendants' false representations, namely, that they would complete the recreational facilities despite having no intention of doing so, as a self-concealing fraud. Id., 215–16. It then decided that it was not necessary to determine whether self-concealing frauds satisfied § 52-595 in other cases, because permitting self-concealing frauds to satisfy § 52-595 in the CUTPA context "would defeat the legislative intention expressed in § 42-110g (f) to bar actions for CUTPA violations after the lapse of more than three years from their occurrence." Id.

In my view, the Appellate Court simply misread *Fichera* as standing for the proposition that the continuing course of conduct doctrine is unavailable as a matter of law to toll the statute of limitations as to all CUTPA claims. There is simply no language to that effect anywhere in *Fichera*; the continuing course of conduct doctrine was not an available toll in that particular case due to pleading and proof deficiencies that were the subject of extensive record review therein. See id., 212–13. Indeed, the Superior Court has aptly read § 42-110g (f) as subject to toll by the continuing course of conduct doctrine, following our application of that doctrine to the similarly worded three year repose language of General Statutes § 52-584 in a medical malpractice case in *Witt* v. *St. Vincent's Medical Center*, 252 Conn. 363, 369–70, 746 A.2d 753 (2000). See *Assurance Co. of America* v. *Yakemore*, 50 Conn. Supp. 28, 37–38, 911 A.2d 777 (2005); see also *Levinson* v. *Westport National Bank*, 900 F. Supp. 2d 143, 180 (D. Conn. 2012) (criticizing Appellate Court's decision in this case and deferring consideration of defendant's claim that continuing course of conduct doctrine does not apply to CUTPA because "*Fichera* appears to hold that such a determination is factual rather than purely legal"), vacated on other grounds, *Levinson* v. *Westport National Bank*, United States District Court, Docket No. 3:09CV269

(VLB) (D. Conn. March 28, 2013); *Udolf 631, LLC* v. *Select Energy Contracting, Inc.*, Superior Court, judicial district of Hartford, Docket No. CV-09-5032387-S (January 12, 2012) (relying on *Yakemore* and criticizing Appellate Court's reading of *Fichera* in present case as "overly broad" and inconsistent with other cases). Accordingly, with no statutory language to the contrary, and no claimed ambiguity that would justify resort to extratextual sources; see General Statutes § 1-2z; I conclude that the CUTPA statute of limitations, § 42-110g (f), is subject to toll by a properly pleaded and proven continuing course of conduct claim.

I would, therefore, reverse the judgment of the Appellate Court and remand the case to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court with direction to deny the defendant's motion for summary judgment.

Accordingly, I respectfully dissent.

[1] I agree with part I of the majority opinion, which concludes that the Appellate Court and trial court should have reached the merits of the plaintiff, John D. Flanery's, continuing course of conduct arguments, because the plaintiff did not waive his right to assert that doctrine in avoidance of the statute of limitations special defense by failing to plead specific entitlement to it under Practice Book § 10-57.

[2] Like the Appellate Court and the majority, I note that the correct spelling of the plaintiff's last name is Flanery. See *Flannery* v. *Singer Asset Finance Co., LLC*, 128 Conn. App. 507, 508 n.1, 17 A.3d 509 (2011). For the purpose of consistency, however, I too maintain the name Flannery in internal citations in conformity with the pleadings, judgment file and Appellate Court opinion.

[3] As the majority notes, "Attorney Glenn MacGrady and Pepe & Hazard, LLP, also were defendants in this case. Partial summary judgment was rendered in their favor on June 18, 2009, and the plaintiff, thereafter, withdrew all remaining claims against these defendants. Accordingly, MacGrady and Pepe & Hazard, LLP, are not parties to this appeal." (Internal quotation marks omitted.) See footnote 3 of the majority opinion. For the sake of simplicity, I will refer only to Singer Asset Finance Company, LLC, as the defendant for purposes of this dissenting opinion.

[4] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[5] General Statutes § 42-110g (f) provides: "An action under this section may not be brought more than three years after the occurrence of a violation of this chapter."

[6] Rule 1.7 of the Rules of Professional Conduct provides: "(a) Except as provided in subsection (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

"(1) the representation of one client will be directly adverse to another client; or

"(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

"(b) Notwithstanding the existence of a concurrent conflict of interest under subsection (a), a lawyer may represent a client if:

"(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

"(2) the representation is not prohibited by law;

"(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or the same proceeding before any tribunal; and

"(4) each affected client gives informed consent, confirmed in writing."

[7] I respectfully disagree with the majority's policy based arguments against the adoption of this rule, namely: (1) "it is doubtful that tolling a statute of limitations against an alleged aider and abettor on the basis of the principal

tortfeasor's conduct alone is consistent with the policies underlying statutes of limitations, namely, to prevent the unexpected enforcement of stale claims and the impairment of proof wrought by lost witnesses and/or evidence"; see footnote 23 of the majority opinion; and (2) the "policy considerations underlying statutes of limitations clearly are implicated by the substantial amount of time that has elapsed between the acts complained of and the filing of this action." In my view, the derivative nature of the aiding and abetting claim, and rigorous proof necessary to establish the elements both of that claim; see, e.g., *Efthimiou* v. *Smith*, supra, 268 Conn. 505; and the continuing course of conduct doctrine; see, e.g., *Watts* v. *Chittenden*, supra, 301 Conn. 583–85; renders concerns about claim staleness and impairment of proof overstated in this context. This is particularly so on the facts of this case, wherein it was wholly foreseeable to all of the parties involved that the plaintiff's tax exposure was likely to extend beyond the three year occurrence period provided by the statutes of limitation, §§ 52-577 and 42-110g (f).

[8] Specifically, the majority posits that, under *Watts*, the continuing course of conduct doctrine does not apply in this case because "MacGrady's original wrongdoing ceased in September, 1999, after the plaintiff sold his lottery winnings to the defendant and MacGrady's representation of the plaintiff, and any conflict of interest due to MacGrady's simultaneous representation of the defendant, ended. Accordingly, when MacGrady resumed his presumably wrongful course of conduct in October, 2002, more than three years later, when he advised the plaintiff to join a tax appeal group, the three year statute of limitations had already run."

[9] This continuing duty under rule 1.7 of the Rules of Professional Conduct was acknowledged in a deposition by Stephen Hazard, the managing partner of Pepe & Hazard, the law firm that had employed MacGrady, and is consistent with the proposition of law that "attorneys have a continuing confidential relationship of trust and fair dealing which survives the termination of the attorney-client relationship . . . ." *Mergler* v. *Crystal Properties Associates, Ltd.*, 179 App. Div. 2d 177, 182, 583 N.Y.S.2d 229 (1992).

I recognize that the majority properly does not deem this court bound by Hazard's testimony, which it considers a legal opinion. See, e.g., *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 796, 17 A.3d 40 (2011) (court not bound by legal opinions of parties, witnesses, or attorney trial referees); *Lamont* v. *New Hartford*, 4 Conn. App. 303, 305, 493 A.2d 298 (1985) (court required to consider, but "is not bound by the opinion of expert witnesses"). Not one of the parties, however, has provided the court with a citation to any legal authority or contrary expert testimony that undermines the correctness of Hazard's testimony. Thus, I accept it for use in this case to define the scope of MacGrady's continuing duty to disclose his conflict of interest.

[10] Because of its conclusion that the continuing course of conduct doctrine does not apply to the facts of this case, the majority appropriately does not reach this issue.

––––––––––––––––––––––––––––––––