******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STRAW POND ASSOCIATES, LLC, ET AL.
*v.* FITZPATRICK, MARIANO &
SANTOS, P.C., ET AL.
(AC 37589)

Lavine, Beach and Prescott, Js.

*Argued February 3—officially released August 23, 2016*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Hon. David R. Tobin, judge trial referee.)

*Brenden P. Leydon*, for the appellants (plaintiffs).

*Raymond J. Plouffe, Jr.*, for the appellees (defendants).

*Opinion*

LAVINE, J. In this legal malpractice action, the plaintiffs, Straw Pond Associates, LLC, Straw Pond Real Estate, LLC, Straw Pond Holdings, LLC, and CUDA Associates, LLC, appeal from the summary judgment rendered by the trial court in favor of the defendants, Fitzpatrick, Mariano & Santos, P.C. (firm), and Edward G. Fitzpatrick, an attorney in the firm. On appeal, the plaintiffs claim that the court erred in granting the defendants' motion for summary judgment by (1) adjudicating, rather than identifying, issues of fact, (2) concluding that their claims were barred by the statute of limitations, and (3) deciding that there were no issues of fact as to the defendants' alleged breach of fiduciary duty. We agree with the plaintiffs' first two claims and, therefore, reverse, in part, the judgment of the trial court.

The plaintiffs commenced the present action by service of process on June 14, 2011. The complaint sounded in three counts: professional negligence, breach of fiduciary duty, and breach of contract.[1] In count one, the plaintiffs alleged that, in March, 2005, they retained the defendants to obtain approvals from various land use boards in the town of Middlebury, including the Water Pollution Control Authority (sewer authority), the Planning and Zoning Commission, and the Board of Selectmen, to enable them to develop a senior housing project (project). In August, 2005, the sewer authority conditionally approved the flow capacity for the project, and in September, 2005, sent a letter (2005 letter) to Straw Pond Real Estate, LLC, in care of Fitzpatrick. In the 2005 letter, the sewer authority set forth its conditional capacity approval and the conditions to which the plaintiffs were required to agree.[2] The sewer authority instructed the plaintiffs to sign the letter and return it.

The complaint further alleged that on certain dates in 2006 and 2007, Kenneth J. Pocius, an attorney for the sewer authority, communicated with Fitzpatrick about the status of the 2005 letter. According to the plaintiffs, Fitzpatrick failed to respond to Pocius or to inform them of his inquiries. In October, 2007, the sewer authority invited Fitzpatrick to attend its November, 2007 meeting, but Fitzpatrick was unable to attend the meeting.[3] The plaintiffs alleged that Fitzpatrick did not tell them that they should attend the meeting. At the November, 2007 meeting, the sewer authority rescinded its conditional capacity approval for the project and thereafter so informed Fitzpatrick.

The plaintiffs alleged that the sewer authority rescinded its conditional capacity approval for the project and refused to reinstate it due to Fitzpatrick's inattention to the 2005 letter and Pocius' inquiries about the status of the 2005 letter. Moreover, the plaintiffs alleged that the defendants failed to inform them of the

2005 letter until December, 2007, after the conditional capacity approval had been rescinded. They also alleged that Fitzpatrick had failed to inform them of the action that they needed to take with respect to the 2005 letter or of the consequences of their failing to respond to it.

The plaintiffs appealed from the sewer authority's rescission of its approval to the Superior Court (sewer appeal), but the appeal was dismissed on March 8, 2011.[4] The sewer authority has denied the plaintiffs' efforts and subsequent application to regain capacity approval.

The plaintiffs further alleged that, in addition to obtaining initial approval from the sewer authority, the defendants acted on their behalf to secure other approvals needed for the project to move forward. Some of the plaintiffs' applications for those other approvals resulted in administrative appeals. The plaintiffs alleged that, from the time they retained the defendants until the time they commenced the present action, they had relied on the defendants, who were their lead counsel charged with getting all of the approvals needed for the project. On August 26, 2009, Fitzpatrick represented the plaintiffs at a global settlement conference to resolve all outstanding project related issues. According to the plaintiffs, the settlement conference failed to meet its objective due to the sewer authority's refusal to reinstate its capacity approval.

The plaintiffs alleged that the defendants continuously represented them on all permitting efforts related to the project up to, and including, the dismissal of the sewer appeal in March, 2011.[5] The plaintiffs alleged that they relied to their detriment on the defendants' expertise in obtaining the necessary approvals for similar projects. Moreover, the plaintiffs alleged that the defendants caused them to believe that the harm caused by the defendants' acts and omissions with respect to the sewer authority rescission could be mitigated and a viable final approval for the project obtained.

The plaintiffs further alleged that the defendants failed to exercise diligence and competence, and failed to communicate properly. The plaintiffs claimed that the defendants "put their own and other interests ahead of the plaintiffs' [interests] and failed to keep loyalty and fidelity to the plaintiffs' project as paramount." In addition, the plaintiffs alleged that the defendants' acts and/or omissions were in violation of the Rules of Professional Conduct, including rules 1.1 (competence), 1.3 (diligence), and 1.4 (communication). As a result of the defendants' claimed acts or omissions, the plaintiffs alleged that they have sustained and will sustain substantial damages.

The defendants filed an amended answer and five special defenses on October 8, 2013. They admitted that the plaintiffs "authorized" them to acquire approvals for the project from land use boards and the Middlebury

Board of Selectmen, and to negotiate pending zoning and Conservation Commission appeals. The defendants, however, denied that they filed sewer capacity applications on behalf of the plaintiffs.[6] The defendants admitted that the plaintiffs received capacity approval from the sewer authority " 'subject to technical approval, assessment and payment discussions and decisions,' " and that the 2005 letter "required a signature on the part of Straw Pond Real Estate, LLC, verifying its agreement, amongst other things, to the assessment of hookup fees and expenses to which it did not agree . . . ." The defendants also admitted that Fitzpatrick received e-mail correspondence from Pocius.

The defendants, however, denied that they failed to tell the plaintiffs about the 2005 letter until December, 2007, failed to inform them of the action they needed to take in response to the letter or the consequences of failing to respond to the letter, and that they "continued to represent the plaintiffs during 'this entire time.' " The defendants alleged that the plaintiffs had retained other counsel to represent them with respect to "specific performance, breach of contract, and zoning appeal matters," and to prosecute certain appeals. In addition, although Fitzpatrick attended the August, 2009 settlement conference, the defendants denied that he was the plaintiffs' lead counsel. They denied that they had violated the Rules of Professional Conduct and that they failed to exercise diligence and competence, and failed to communicate properly. The defendants also denied that the plaintiffs sustained damages as a result of their alleged acts or omissions. Moreover, the defendants denied that they breached their fiduciary duties and breached their contract with the plaintiffs.

In their special defenses, the defendants alleged that all three counts of the complaint were barred by General Statutes § 52-577 in that the action was commenced more than three years after the act or omission complained of. The defendants also alleged that, if the plaintiffs sustained any damages, those damages were proximately caused by the plaintiffs' own carelessness and negligence in that they failed to agree to the sewer authority's hookup costs and failed to authorize Fitzpatrick to accept the conditions stated in the 2005 letter. The defendants further pleaded that the plaintiffs failed to mitigate their damages. The plaintiffs replied to the defendants' special defenses in a one sentence general denial.[7]

On April 9, 2014, the defendants filed a motion for summary judgment as to all counts of the complaint on the ground that each was barred by § 52-577.[8] In the alternative, the defendants asserted that all counts of the plaintiffs' complaint fail, as a matter of law, in that the plaintiffs cannot establish a breach of the standard of care, a breach of fiduciary duty, breach of the parties'

fee agreement, or that the plaintiffs' alleged damages were caused by the defendants. In their accompanying memorandum of law, the defendants represented that the plaintiffs fully were aware of the 2005 letter and that they declined to sign the letter because they disagreed with the $2.057 million hookup fees and the time constraints the sewer authority had imposed on them with respect to obtaining other board and agency approvals. The defendants also argued that there was no evidentiary support for the plaintiffs' claims.

The defendants appended numerous documents, including Fitzpatrick's affidavit, to their memorandum of law. In his affidavit, Fitzpatrick attested, in part: "I personally met with and spoke to Ben Morris, the principal member of Straw Pond with whom I dealt, on multiple occasions concerning the project, including many discussions from September, 2005 through 2007, concerning Straw Pond's refusal to sign the . . . 2005 letter of conditional capacity approval. . . . Ben Morris communicated to me personally that Straw Pond and its affiliates refused to sign the . . . letter because it did not agree to the conditions specified, especially the assessment of over [$2 million] in hook-up fees and the two year deadline for obtaining all government agency approvals." They also appended copies of the plaintiffs' briefs filed in the sewer appeal in which the plaintiffs admitted that they were aware of the conditions contained in the 2005 letter and that they intentionally refused to sign off on those conditions because they were inconsistent with the sewer authority's August, 2005 authorization.

As to count two, which alleged breach of fiduciary duty, the defendants asserted that it failed to state a claim upon which relief can be granted. They argued that a proper cause of action for breach of fiduciary duty requires factual allegations impugning an attorney's honesty, morality, or loyalty. The plaintiffs' complaint, they continued, solely alleged conduct that objectively pertains to the alleged breach of the standard of care. They asserted that the plaintiffs' allegations of disloyalty were merely conclusory.

On September 17, 2014, the plaintiffs filed an objection to the motion for summary judgment, contending that there were genuine issues of material fact as to whether the defendants had been retained to obtain project approval from the sewer authority. They appended numerous documents, including the transcript of Fitzpatrick's deposition testimony, and an affidavit of John Nelson, one of the plaintiffs' principals.[9] The plaintiffs argued that the defendants had represented them at least through the global settlement conference held on August 26, 2009, and that the continuous representation doctrine tolled the running of the statute of limitations. Therefore, they concluded, the action was timely "filed" in June, 2011.[10]

The plaintiffs also argued in their memorandum of law that Fitzpatrick had a conflict of interest in that, while he was representing the plaintiffs before the sewer authority, he represented other applicants seeking an allocation of the limited sewer capacity that was available, and at times he served as counsel for the Naugatuck Regional Water Authority, which provided sewer services for Middlebury. The plaintiffs argued that Fitzpatrick failed to disclose the alleged conflicts of interest.

The defendants submitted a supplemental memorandum of law and presented evidence that in December, 2007, the plaintiffs retained Robert Fuller, an attorney, to pursue the sewer appeal, and Robin M. Pearson, an attorney, to file a new sewer capacity application.[11] The defendants argued that by retaining Fuller and Pearson, the plaintiffs de facto terminated Fitzpatrick's representation for the purpose of obtaining sewer capacity approval for the project.

The trial court issued a memorandum of decision on December 5, 2014, in which it granted the defendants' motion for summary judgment. On the basis of the evidence presented, the court concluded with respect to the count of professional negligence that the defendants were not the cause of the plaintiffs' alleged damages. With respect to the count of breach of fiduciary duty, the court stated that the plaintiffs submitted no evidence to raise an issue of fact as to the defendants' loyalty or honesty, but merely alleged a "bald assertion of disloyalty." The court also found that the plaintiffs' claims were barred by the statute of limitations, § 52-577, and that the continuous representation doctrine did not toll the running of the statute.

The plaintiffs filed a motion to reargue in which they claimed that the court had misapprehended or overlooked significant issues of material fact and that this court's decision in *Cefaratti* v. *Aranow*, 154 Conn. App. 1, 19–20, 105 A.3d 265 (2014) (genuine issue of material fact whether continuing course of treatment doctrine tolled statute of limitations in medical malpractice action), aff'd, 321 Conn. 637, 645, A.3d (2016) (same), cast doubt on the trial court's reasoning. The plaintiffs argued that their legal malpractice claim primarily was focused on the defendants' failure to advise them of the sewer authority's inquiries in 2006 and of the November, 2007 sewer authority meeting. The court denied the motion to reargue in a memorandum of decision issued on December 30, 2014, stating that it had considered the plaintiffs' argument, which they made in their objection to the motion for summary judgment, when it granted the motion for summary judgment. The court found, on the basis of the evidence presented, that the plaintiffs knew of the defendants' alleged negligence more than three years prior to commencing the present action and that the continuous representation doctrine

did not toll the statute of limitations because, in late 2007 or early 2008, the plaintiffs hired other attorneys to deal with the sewer authority. The plaintiffs appealed from the granting of the defendants' motion for summary judgment. Additional facts will be set forth as needed.

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . [S]ummary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012).

"This court's review of a trial court's granting of a motion for summary judgment is plenary in nature. . . . Our task is to determine whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing . . . that the party is . . . entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Targonski* v. *Clebowicz*, 142 Conn. App. 97, 105–106, 63 A.3d 1001 (2013).

I

The plaintiffs claim that the court improperly rendered summary judgment by resolving issues of fact, rather than by determining whether any genuine issues of material fact exist as to the element of causation. We agree.

"The party moving for summary judgment bears the burden of proving the absence of a dispute as to any material fact. . . . The court must view the evidence in the light most favorable to the nonmovant. . . . In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Citations omitted; internal quotation marks omitted.) *Lomangino* v. *LaChance Farms, Inc.*, 17 Conn. App. 436, 438, 553 A.2d 197 (1989).

In its memorandum of decision, the court set forth the elements of a cause of action for professional negligence. "In general, the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Internal quotation marks omitted.) *Lee* v. *Harlow, Adams & Friedman, P.C.*, 116 Conn. App. 289, 297, 975 A.2d 715 (2009). As to causation in legal malpractice actions, "[a] causal relation between the defendant's wrongful conduct and the plaintiff's injuries is a fundamental element without which a plaintiff has no case . . . . Thus, if the plaintiff's injury would not have occurred but for the defendant's conduct, then the defendant's conduct is a cause in fact of the plaintiff's injury." (Citations omitted; internal quotation marks omitted.) *Baruno* v. *Slane*, 151 Conn. App. 386, 399, 94 A.3d 1230, cert. denied, 314 Conn. 920, 100 A.3d 851 (2014).

In granting the motion for summary judgment, the court concluded that the plaintiffs had failed to raise an issue of fact as to whether the defendants were the cause of their alleged loss. In coming to that conclusion, the court drew inferences from the affidavits before it and chose to credit Fitzpatrick, rather than Nelson, as to whether Fitzpatrick had informed the plaintiffs of the 2005 letter and that it was to be signed and returned. The court also was influenced by the language in the briefs the plaintiffs submitted in their sewer appeal,[12] which, according to the court, established that the plaintiffs would not in any event have accepted the conditions that the sewer authority sought to impose on them. For these reasons, the court concluded that the defendants had demonstrated the absence of a genuine issue of material fact as to whether Fitzpatrick committed an act or omission that might constitute professional negligence because he did not inform the plaintiffs of the conditions in the 2005 letter, or that the plaintiffs were damaged by his alleged negligence.

On appeal, the plaintiffs claim that the court decided issues of fact and too narrowly defined their claims of professional negligence. They argue that their malpractice claim is founded not only on Fitzpatrick's failure to inform them of the 2005 letter, but also on his failure to inform them of the sewer authority's ongoing inquiries and concerns in 2006 and 2007, his failure to respond to the sewer authority's inquiries, his failure to advise them as to how they should deal with the sewer authority, and, particularly, his failure to inform them that the sewer authority would discuss the project at its November, 2007 meeting, which Fitzpatrick did not attend. Nelson averred that the plaintiffs would have attended that meeting had they known about it. As to the court's findings that the plaintiffs' admitted in their sewer appeal that they did not agree with the conditions the sewer authority imposed in the 2005 letter, the plain-

tiffs argue in their reply brief to this court, for the first time on appeal, that arguments made in another proceeding are not judicial admissions.[13] We agree that the court improperly made credibility determinations when ruling on the defendants' motion for summary judgment, but disagree that the court improperly considered the plaintiffs' briefs in the sewer appeal. See *Nationwide Mutual Ins. Co.* v. *Allen*, 83 Conn. App. 526, 541–42, 850 A.2d 1047 (pleadings from another case not judicial admissions but admissible as evidentiary admissions for trier of fact to consider), cert. denied, 271 Conn. 907, 859 A.2d 562 (2004).

A

We first address the plaintiffs' assertion that the court improperly relied on statements made in their sewer appeal briefs when concluding that there were no genuine issues of material fact as to causation. See footnote 12 of this opinion. We do not agree.

The case of *Nationwide Mutual Ins. Co.* v. *Allen*, supra, 83 Conn. App. 527, a declaratory judgment action, guides our consideration of the plaintiffs' claim. In *Nationwide Mutual Ins. Co.*, the trial court concluded that the plaintiff insurance company was not obligated to defend or indemnify the defendant employer, Allen, in an underlying negligence action brought by the defendant employee, William Shaw, who also had filed a workers' compensation claim against Allen. Id., 528. The issue in that case that is relevant to the present appeal is whether the court in the declaratory judgment action "improperly determined that statements made by Shaw contained in his workers' compensation claim constituted an admission." Id., 541.

"Factual allegations contained in pleadings upon which the cause is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . The admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader." (Citation omitted; internal quotation marks omitted.) Id., 541–42.

"In contrast with a judicial admission, which prohibits any further dispute of a party's factual allegation contained in its pleadings on which the case is tried, [a]n evidential admission is subject to explanation by the party making it so that the trier may properly evaluate it. . . . Thus, an evidential admission, while relevant as proof of the matter stated . . . [is] not conclusive." (Citation omitted; internal quotation marks omitted.) Id., 542. On appeal, this court concluded that Shaw's statement in his workers' compensation application that he was Allen's employee was an evidential admission and was subject to evaluation by the trier of fact when it made findings from which it drew its conclusions. Id., 542.

In the present case, the defendants submitted state-

ments from the sewer appeal briefs in support of their motion for summary judgment. We agree with the plaintiffs that the statements in the briefs of their sewer appeal were not judicial admissions. However, as explained in *Nationwide Mutual Ins. Co.*, the statements properly were before the court as evidence of the plaintiffs' refusal to sign the 2005 letter because they did not agree with the conditions contained in it. Given that the role of the court in deciding a motion for summary judgment is to determine whether there were genuine issues of material fact, in the face of the evidence in the sewer appeal briefs, the plaintiffs should have presented evidence to put in question whether they objected to the hookup fees and time limitations imposed by the sewer authority.

"Any adverse party shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence. . . ." Practice Book § 17-45. The record before us does not disclose any evidence submitted by the plaintiffs regarding their acceptance of or objection to the sewer authority's conditions or to explain the statements made in the briefs in the sewer appeal on their behalf. Moreover, the plaintiffs did not object to the court's considering the sewer appeal briefs in the trial court. We therefore disagree that the court improperly considered the sewer appeal briefs when deciding the motion for summary judgment.

B

The plaintiffs claim that the court decided issues of fact and focused its examination of their malpractice claim too narrowly by limiting it to Fitzpatrick's alleged failure to inform them of the 2005 letter. We agree.

In addressing the evidence before it, the court focused on the affidavits of Nelson and Fitzpatrick. The court credited Fitzpatrick's attestations that he discussed the 2005 letter with Morris, and found that Nelson's affidavit invited the court to infer that because Morris did not tell him of his conversations with Fitzpatrick they did not occur. "Issue[s] of fact [encompass] not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." (Internal quotation marks omitted.) *United Oil Co.* v. *Urban Redevelopment Commission*, 158 Conn. 364, 379, 260 A.2d 596 (1969). In summary judgment, the court's role is not to weigh the credibility of the parties, which falls within the province of the finder of fact. See *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 107, 639 A.2d 507 (1994). When a court, in ruling on a motion for summary judgment, is confronted with conflicting facts, resolution and interpretation of which would require determinations of credibility, summary judgment is not appropriate.

We agree with the plaintiffs that their claims of professional negligence encompassed more than Fitzpatrick's alleged failure to inform them of the 2005 letter. Nelson attested that the plaintiffs did not know of the sewer authority's invitation for them to attend the November, 2007 meeting. He attested, in relevant part, that "[i]f we had known that there was going to be a [sewer authority] meeting in November, 2007, where the subject of our sewer capacity allocation was going to be discussed, and if we had known that [Fitzpatrick] couldn't be at that meeting representing our interests, we would have taken steps to ensure that someone from our group was there to explain our position to the [sewer authority] and to represent our interests." In their motion to reargue, the plaintiffs contended that the November, 2007 meeting was the " 'last clear chance' " for them to negotiate with the sewer authority about the conditions of approval and to reach an accord or not.

For his part, Fitzpatrick testified at his deposition that he had no recollection as to whether he informed the plaintiffs of the November, 2007 meeting. We conclude, on the basis of our review of the evidence submitted in support of, and in objection to, the defendants' motion for summary judgment, that there are genuine issues of material fact concerning the November, 2007 meeting. It is unclear whether Fitzpatrick informed the plaintiffs of the meeting and what might have transpired if the plaintiffs had attended. We, therefore, agree with the plaintiffs that the court too narrowly focused the plaintiffs' claim of professional negligence solely on the alleged failure of Fitzpatrick to inform the plaintiffs of the 2005 letter. Because there are genuine issues of material fact related to the allegations of professional negligence, we conclude that the court improperly granted the motion for summary judgment on that ground.

II

The plaintiffs second claim is that the court improperly granted the defendants' motion for summary judgment on the ground that their claims were barred by the statute of limitations, § 52-577. They argue that the statute of limitations was tolled by the continuous representation doctrine in that the defendants continuously represented them through at least the settlement conference held in August, 2009. We conclude that there are genuine issues of material fact as to whether the defendants were professionally negligent, and if so, whether the plaintiffs' claims are barred by the statute of limitations.

"Summary judgment may be granted where the claim is barred by the statute of limitations. . . . Summary judgment is appropriate on statute of limitations grounds when the material facts concerning the statute

of limitations [are] not in dispute . . . ." (Citation omitted; internal quotation marks omitted.) *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 313, 77 A.3d 726 (2013). "The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." (Internal quotation marks omitted.) *Targonski* v. *Clebowicz*, supra, 142 Conn. App. 106.

The essence of the plaintiffs' claim is that they retained the defendants in 2005 to represent them before all relevant boards and agencies to obtain the approvals needed to move the project forward, including the sewer authority, and that they never limited the scope and nature of the defendants' representation through the time of the global settlement conference held in August, 2009. Despite the fact that they retained Fuller and Pearson in December, 2007, the plaintiffs insist that they did not terminate their attorney-client relationship with the defendants with respect to the sewer authority representation. The defendants have taken the position that by retaining Fuller and Pearson, the plaintiffs de facto terminated their relationship with them with respect to the sewer authority representation.

In granting the defendants' motion for summary judgment, the trial court stated, among other things,[14] that the uncontradicted evidence demonstrated that the plaintiffs knew of the defendants' alleged negligence more than three years prior to their commencing the present action and that the continuous representation doctrine did not toll the statute of limitations because the plaintiffs had retained two other attorneys to represent them in their dealings with the sewer authority. In their motion to reargue, the plaintiffs stated that *Cefaratti* v. *Aranow*, supra, 154 Conn. App. 1, cast doubt on the trial court's reasoning with respect to the statute of limitations.

The court reviewed *Cefaratti*, and determined that the facts and legal theories in that case were distinguishable.[15] The court then turned to *DeLeo* v. *Nusbaum*, 263 Conn. 588, 597, 821 A.2d 744 (2003), for guidance. The court noted that our Supreme Court has stated that the application of any doctrine that may toll a statute of limitations or a statute of repose is "conspicuously fact bound." *Martinelli* v. *Fusi*, 290 Conn. 347, 356, 963 A.2d 640 (2009).

The trial court found that the defendants submitted undisputed evidence that immediately after the sewer authority rescinded its approval, the plaintiffs retained new counsel to deal with the sewer authority. The court also found it to be undisputed that the plaintiffs did not commence the present action until June, 2011. To support their position that the defendants continuously had represented them, the plaintiffs relied exclusively on Fitzpatrick's participation in the August, 2009 global

settlement conference, where the sewer authority was discussed along with land use agencies that needed to approve the project. The court concluded that there were no genuine issues of material fact to support the plaintiffs' claim that the continuous representation doctrine was applicable.

An action alleging legal malpractice or negligence is a tort claim subject to the three year statute of limitations set forth in § 52-577. See footnote 8 of this opinion. "Although allowing a statute of limitations defense may result in meritorious claims being foreclosed, that must be so. A statute of limitations promotes two important interests: (1) it reflects a policy of law, as declared by the legislature, that after a given length of time a [defendant] should be sheltered from liability and furthers the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . and (2) to avoid the difficulty in proof and record keeping which suits involving older [claims] impose." (Internal quotation marks omitted.) *Targonski* v. *Clebowicz*, supra, 142 Conn. App. 106.

"This court has determined that [§] 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. . . . Moreover, our Supreme Court has stated that [i]n construing our general tort statute of limitations . . . § 52-577, which allows an action to be brought within three years from the date of the act or omission complained of, we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. . . . The three year limitation period of § 52-577, therefore, begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Internal quotation marks omitted.) Id., 106–107.

In the present case, the plaintiffs claim that Fitzpatrick failed to advise them of the 2005 letter, his ongoing communications with Pocius, and the November, 2007 meeting. There appears to be no dispute that the plaintiffs learned that the sewer authority rescinded its conditional capacity approval in December, 2007, and that they did not commence the present action until June, 2011—more than three years later. The defendants claim that the plaintiffs' action is barred by § 52-577; the plaintiffs claim that the statute was tolled by the continuous representation doctrine.

Although the question of whether a party's claim is barred by the statute of limitations is a question of law, the issue "of whether a party engaged in a continuing course of conduct that tolled the running of the statute

of limitations is a mixed question of law and fact." (Internal quotation marks omitted.) *Vanliner Ins. Co.* v. *Fay*, 98 Conn. App. 125, 139, 907 A.2d 1220 (2006).

In *Cefaratti* v. *Aranow*, 321 Conn. 637,  A.3d (2016), our Supreme Court concluded that in medical malpractice cases where there is no dispute that the plaintiff filed his or her complaint after the statute of limitations period had expired, "the burden is on the plaintiff to establish that there is a genuine issue of material fact as to whether the statute of limitations was tolled by the continuing course of treatment doctrine." Id., 646. We believe, therefore, that in similar time barred situations involving legal malpractice claims, the burden is on the plaintiff to establish that there is a genuine issue of material fact as to whether the statute of limitations was tolled by the continuous representation doctrine.

Our Supreme Court has recognized the continuing course of conduct doctrine in a variety of cases sounding in tort, including professional malpractice. *Watts* v. *Chittenden*, 301 Conn. 575, 583–84, 22 A.3d 1214 (2011). "Therefore, a precondition for the operation of the continuing course of conduct doctrine is that the defendant must have committed an initial wrong upon the plaintiff. . . .

"A second requirement for the operation of the continuing course of conduct doctrine is that there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. . . . [Our Supreme Court] has held this requirement to be satisfied when there was wrongful conduct of a defendant related to the prior act." (Citation omitted; internal quotation marks omitted.) Id., 585.

"Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act." (Internal quotation marks omitted.) *Vanliner Ins. Co.* v. *Fay*, supra, 98 Conn. App. 140.

Both this court and our Supreme Court have had occasion to address the continuing course of conduct doctrine in the context of a claim of legal malpractice. Both parties here cite the case of *DeLeo* v. *Nusbaum*, supra, 263 Conn. 588, in their appellate briefs. *DeLeo* concerned a legal malpractice action that arose out of the defendant lawyer's representation of the plaintiff husband in a dissolution of marriage action. Id., 589. Following the close of evidence in the malpractice action, the defendant lawyer moved for a directed verdict on the ground that the malpractice action was barred by § 52-577. The plaintiff husband opposed the motion for a directed verdict under the continuous

course of conduct doctrine or the continuous representation doctrine. Id., 590–91. The trial court knew of no appellate case in Connecticut that recognized the continuous representation doctrine but assumed that the doctrine was the equivalent of the continuous course of treatment doctrine, which our Supreme Court had recognized in medical malpractice actions. Id., 591. After applying the facts to the continuous course of treatment doctrine, it concluded that a jury could not reasonably have found that there was a continuing attorney-client relationship between the parties and granted the motion for a directed verdict. Id., 593. The plaintiff husband appealed, and our Supreme Court transferred the case to itself. Id.

In *DeLeo*, our Supreme Court discussed this court's decision in *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 166, 795 A.2d 572 (2002), in which this court adopted the continuous representation doctrine for several reasons. This court previously had recognized the continuous representation doctrine, in part, because our jurisprudence permits the tolling of the statute of limitations under the continuing course of conduct and continuous treatment doctrines, which are very similar in policy and application to the continuous representation doctrine.[16] *DeLeo* v. *Nusbaum*, supra, 263 Conn. 594. *Rosenfield* and *DeLeo*, however, are factually distinguishable from the present case because in those cases the alleged malpractice occurred during the course of litigation and was memorialized in court pleadings or in hearing transcripts. See footnote 17 of this opinion. The alleged malpractice in the present case did not occur during the course of litigation and there are no pleadings or transcripts in which the alleged malpractice is memorialized for our review.

Although our Supreme Court identified many reasons it considered adoption of the continuous representation doctrine to be advisable, it was mindful that "any tolling of the statute of limitations may compromise the goals of the statute itself." Id., 596. "A statute of limitation or of repose is designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether *by death* or disappearance of witnesses, fading memories, disappearance of documents or otherwise." (Emphasis added; internal quotation marks omitted.) Id.

With the foregoing considerations in mind, our Supreme Court concluded that the "continuous representation doctrine, suitably modified to reflect these competing interests, should be adopted." Id., 596–97.

Under the rule it then adopted, "a plaintiff may invoke the [continuous representation] doctrine, and thus toll the statute of limitations, when the plaintiff can show: (1) that the defendant continued to represent him with regard to the same underlying matter; *and* (2) either the plaintiff did not know of the alleged malpractice *or* that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period." (Emphasis in original; footnote omitted.) Id., 597. Our Supreme Court, however, specifically limited the *DeLeo* continuous representation doctrine to legal malpractice that allegedly occurred during the course of litigation.[17]

Despite this limitation, *DeLeo* is instructive in that it defines what is meant by legal representation. The test is two-pronged. Id. "[R]epresentation continues for the purposes of the continuous representation doctrine until either the formal or the de facto termination of the attorney-client relationship. The formal termination of the attorney-client relationship occurs when the attorney is discharged by the client, the matter for which the attorney was hired comes to a conclusion, or a court grants the attorney's motion to withdraw from the representation. A de facto termination occurs if the *client takes a step that unequivocally indicates that he has ceased relying on his attorney's professional judgment* in protecting his legal interests, such as hiring a second attorney to consider a possible malpractice claim or filing a grievance against the attorney. Once such a step has been taken, representation may not be said to continue for purposes of the continuous representation doctrine." (Emphasis added; footnotes omitted.) Id., 597–98. Whether the attorney-client relationship has been terminated, either formally or de facto, the continuous representation doctrine tolls the statute of limitations only for as long as either the plaintiff does not know of the alleged malpractice or the attorney may still be able to mitigate the harm allegedly caused. Id., 599.

In *Targonski* v. *Clebowicz*, supra, 142 Conn. App. 97, this court applied the continuous representation doctrine in the context of a real estate transaction; id., 99; which notably is not litigation, but the statute of limitations was tolled by the continuous representation doctrine because the plaintiff buyers were unaware of the defendant attorney's negligence for several years. Id., 110–11. The defendant attorney was retained by the buyers of a building lot "together with a right-of-way over an adjacent lot retained by the seller . . . ." Id., 99. The defendant attorney knew of the buyers' and seller's agreement with respect to the right-of-way at the time he conducted the closing on behalf of the buyers in June, 2004, but the warranty deed he obtained on behalf of the buyers did not mention the right-of-way. Id., 99–100. When the buyers asked whether the right-of-way was included in the deed, the defendant

attorney assured them that there was nothing to worry about. Id., 100. Subsequently, the seller's attorney informed the defendant attorney that the right-of-way was not incorporated in the deed and proposed steps to cure the defect. Id. The seller withdrew the offer to cure in December, 2004, due to the lack of response from the defendant attorney. Id., 101. In September, 2005, the defendant attorney represented the buyers when they converted a construction loan to a mortgage and acquired a small additional piece of land from the seller. Id.

On August 1, 2008, the seller's attorney informed the defendant attorney that the buyers had built a stone wall on the seller's land. Id., 102. At that time, the defendant attorney informed the buyers that they did not have a right-of-way over the seller's land. The seller initiated an injunction against the buyers, who retained another attorney to represent their interests. Id. The buyers commenced an action against the defendant attorney in March, 2009, alleging negligence for failing to include the right-of-way in the deed and engaging in a continuous course of conduct "to prolong the harm flowing from his drafting error by failing to respond to the . . . letters [from the seller's attorney] proposing to cure the defective deed . . . ." Id., 102–103. The defendant attorney alleged that the buyers' claims were barred by § 52-577 because his representation ended in July, 2004. Id., 103. The defendant attorney filed a motion for summary judgment in which he claimed that the buyers could not invoke the continuous representation doctrine to toll the statute of limitations because the doctrine was limited in application to litigation matters, and the buyers had failed to present evidence creating a genuine issue of material fact that he continued to represent them in the same matter in which he allegedly was negligent. Id., 104. The trial court granted the motion for summary judgment, and the buyers appealed. Id., 104–105.

After citing the continuing course of conduct doctrine adopted in *Watts* v. *Chittenden*, supra, 301 Conn. 584–85, this court stated that the buyers' appeal turned on the resolution of "the second element of the continuing course of conduct doctrine, to wit: whether the defendant [attorney], by his conduct after the alleged malpractice, breached a continuing duty to the plaintiffs that was related to his initial wrong." *Targonski* v. *Clebowicz*, supra, 142 Conn. App. 109. In as much as *Targonski* concerned the negligent drafting of a deed that the buyers had signed, "[t]here is no tolling of statutes of limitation in either tort or contract actions for the failure of an attorney to tell a client that a document drafted by the attorney could be inaccurate because, once the representation of the client is complete and the document executed, any warning would be ineffective." (Internal quotation marks omitted.) Id., 109–10. Where an attorney subsequently learns that the document was

negligently drafted even after the representation has ended, the attorney "owes a duty to his client, which relates back to his original wrong of rendering negligent services to the client, to correct the results of such prior negligence if he later learns of the negligence at a time when he has the power to remedy the problems arising from it." Id., 110. By force of logic, "this duty continues until such time as he takes action to cure his prior negligence or the opportunity to cure such prior negligence ceases to exist." Id. This court concluded that the defendant lawyer could have corrected his drafting error pursuant to the means suggested by the seller's attorney up until the offer to cure was withdrawn in December, 2008. Id., 111. This court, thus, reversed the summary judgment rendered in favor of the defendant lawyer. Id., 113.

The facts of the present action are dissimilar to those of *Targonski*, in which the defendant attorney's negligence and its resulting harm were not discovered by the buyers until years later. Importantly, in the present case, both the plaintiffs and the defendants learned that the sewer authority withdrew its conditional capacity approval at approximately the same time in December, 2007, which was the consequence of the defendants' alleged failure to inform the plaintiffs of the 2005 letter and the November, 2007 meeting. Within one month, the plaintiffs retained Fuller to pursue the sewer appeal and Pearson to file another sewer capacity application. The defendants claim, therefore, that the plaintiffs ceased to rely on their professional judgment with respect to the sewer authority at this time. The defendants, however, continued to represent the plaintiffs before land use agencies and the Middlebury Board of Selectmen to obtain approvals for the project. The plaintiffs contend that because Fitzpatrick was present at the global settlement conference held in August, 2009, where the sewer authority was discussed, Fitzpatrick continued to represent them with regard to the sewer authority.

"[A] plaintiff may invoke the [continuous representation] doctrine, and thus toll the statute of limitations, when the plaintiff can show: (1) that the defendant continued to represent him with regard to the same underlying matter; *and* (2) either the plaintiff did not know of the alleged malpractice *or* that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period." (Emphasis in original; footnote omitted.) *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597. Before the finder of fact considers the continuous representation doctrine in the present case, the plaintiffs must prove that the defendants committed an initial wrong upon them. See *Watts* v. *Chittenden*, supra, 301 Conn. 585. This will require the trier of fact to weigh the credibility of Fitzpatrick, who claims to have discussed the 2005 letter with the now deceased Morris, and Nelson, who

claims that Morris never told him of his discussions with Fitzpatrick about the 2005 letter. The trier of fact also will have to determine whether the attendance by the plaintiffs or one of their agents at the November, 2007 meeting would have prevented the sewer authority from withdrawing its conditional capacity approval.

If the trier of fact determines that the defendants breached the standard of care, it must then consider whether the continuous representation doctrine tolled the running of the statute of limitations. The trier of fact will have to determine whether the defendants continued to represent the plaintiffs after they retained Fuller and Pearson. See *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597–98. If the trier of fact finds that the defendants continued to represent the plaintiffs after the plaintiffs retained Fuller and Pearson, it will then have to determine whether Fitzpatrick was able to or would have been able to mitigate his professional negligence.[18]

After reviewing the record and considering the law regarding professional negligence, the statute of limitations, and the continuous representation doctrine, we conclude that there are many genuine issues of material fact and that the court improperly granted the defendants' motion for summary judgment on the ground that the plaintiffs' claims were barred by the statute of limitations.[19] In reaching this conclusion, we are mindful of the legislative policy underlying statutes of limitation: "to prevent the unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution"; *Vilcinskas* v. *Sears, Roebuck & Co.*, 144 Conn. 170, 174–75, 127 A.2d 814 (1956); and "to promote justice by preventing surprise through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." (Internal quotation marks omitted.) *Grimes* v. *Housing Authority*, 42 Conn. App. 324, 328, 679 A.2d 397 (1996), rev'd on other grounds, 242 Conn. 236, 898 A.2d 302 (1998). In this matter, the resolution of the plaintiffs' claims is complicated by the death of Morris.

Because the court improperly concluded that the plaintiffs' claims were barred by the statute of limitations, it improperly granted the motion for summary judgment as to the plaintiffs' claim of professional negligence. The matter must, therefore, be remanded for further proceedings.

### III

The plaintiffs' third claim is that the court improperly granted summary judgment regarding count two of the complaint, which alleged that the defendants breached their fiduciary duty. We disagree.

In count two, the plaintiffs realleged all of the allegations contained in count one plus that the "actions or omissions of the defendants described above, were in

breach of the fiduciary duties they owed to the plaintiffs." In their motion for summary judgment, the defendants asserted that summary judgment should be granted as to all three counts of the plaintiffs' complaint because the factual allegations in count one relate to the violation of duties owed by attorneys in general. In their memorandum of law in support of the motion for summary judgment, the defendants argued that the plaintiffs' breach of fiduciary duty count failed to state a claim upon which relief can be granted. Relying on *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 56–57, 717 A.2d 724 (1998), the defendants argued that under Connecticut law where the allegations of a complaint sound in breach of the standard of care pertaining to attorneys, a plaintiff cannot maintain a separate and independent count for breach of fiduciary duty for the identical conduct. A viable cause of action for breach of fiduciary duty requires factual allegations impugning the attorney's honesty, morality, or loyalty. The defendants contended that the plaintiffs' complaint alleged no facts and there is no evidence that the defendants failed to maintain loyalty to the plaintiffs. Although count two alleges "actions or omissions of the defendants described above were in breach of the fiduciary duties they owed to the plaintiffs," the defendants argued that the allegation is a legal conclusion lacking factual support. In their supplemental memorandum of law in support of their motion for summary judgment, the defendants stated that the plaintiffs' complaint contains no allegation from which to find a breach of duty after the alleged initial wrong, i.e., "the alleged failure to advise the plaintiffs of the September, 2005 conditional capacity authorization." Moreover, the complaint contains no allegation that Fitzpatrick "engaged in any new affirmative acts or omissions following the initial alleged failure to advise." An attorney's breach of duty is actionable only when supported by adequate factual allegations.

In their objection to the defendants' motion for summary judgment, the plaintiffs summarized a portion of Fitzpatrick's deposition testimony and represented that Middlebury does not have its own sewage treatment facility. Middlebury therefore purchases sewer capacity from the town of Naugatuck. Moreover, at various times, while he was representing the plaintiffs, Fitzpatrick also either represented other applicants seeking an allocation of Naugatuck sewer capacity or that he served as legal counsel to the Naugatuck sewer authority. The plaintiffs argued that seeking the allocation of sewer capacity for other projects was a conflict of interest, but their complaint alleges no factual basis for that assertion.

In granting the defendants' motion for summary judgment as to count two, the court cited *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribikoff & Kotkin*, supra, 247 Conn. 48, for the controlling rule of law.

"Professional negligence alone . . . does not give rise automatically to a claim for breach of fiduciary duty. Although an attorney-client relationship imposes a fiduciary duty on the attorney . . . not every instance of professional negligence results in a breach of that fiduciary duty. [A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other. . . . Professional negligence implicates a duty of care, while breach of fiduciary duty implicates a duty of loyalty and honesty." (Citations omitted; internal quotation marks omitted.) Id., 56–57. Although the court granted summary judgment in favor of the defendants on the evidentiary basis of Fitzpatrick's affidavit and the firm's retainer agreement, it concluded that the plaintiffs "merely [had] alleged a bald assertion of disloyalty." We agree with the court's construction of the complaint.

On appeal, the plaintiffs have presented a convoluted argument that the court improperly granted summary judgment as to the breach of fiduciary duty count because the defendants failed to disclose certain documents regarding the disclosure of or waiver of the defendants' conflicts of interest and, therefore, there are genuine issues of material fact regarding conflicts of interest.[20] In their brief, the defendants argue that the trial court properly granted summary judgment in their favor because the complaint fails to contain factual allegations impugning their honesty, morality, or loyalty. We agree with the defendants.

It is again worth noting the principles underlying summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the *pleadings*, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case." (Emphasis added; internal quotation marks omitted.) *Stevens* v. *Carlton Helming*, 163 Conn. App. 241, 245, 135 A.3d 728 (2016).

"A genuine issue of material fact must be one which the party opposing the motion is *entitled to litigate under his pleadings* and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment. . . . *The facts at issue* [*in the context of summary judgment*] *are those alleged in the pleadings.* . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id. Summary judgment, however, may be used to challenge the legal sufficiency of a complaint when the complaint fails to set forth a cause of action and the

defect cannot be cured by repleading. See *Larobina* v. *McDonald*, 274 Conn. 394, 401, 876 A.2d 522 (2005).

"[T]he interpretation of pleadings is always a question of law for the court. . . . We have pointed out that [t]he burden [is] upon the pleaders to make sure averments that the material facts should appear with reasonable certainty; and for that purpose [the pleaders] were allowed to use their own language. Whenever that language fails to define *clearly* the issues in dispute, the court will put such reasonable construction as will give effect to the pleadings in conformity with the general theory which it was intended to follow, and do substantial justice *between the parties*." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985).

We agree with the court that the plaintiffs' allegation that the defendants "put their own or other interests ahead of the plaintiffs' [interests] and failed to keep loyalty and fidelity to the plaintiffs' project as paramount" is insufficient to constitute an alleged breach of fiduciary duty. This allegation is a conclusion that is insufficient to advise the defendants or the court of the facts on which the plaintiffs intended to rely in proving that the defendants breached their fiduciary duty. On the basis of our plenary review of the complaint, we conclude that the plaintiffs' allegations that the defendants were negligent in failing to apprise them of the 2005 letter and other communications from the sewer authority fail to state a cause of action for breach of fiduciary duty. Moreover, the complaint alleges that the defendants violated the Rules of Professional Conduct concerning competency, diligence, and communication. It does not allege that the defendants had a conflict of interest or that they violated rule 1.7 of the Rules of Professional Conduct, which concerns conflicts of interest. The plaintiffs' factual representations and arguments in opposing the defendants' motion for summary judgment, and here on appeal, therefore, are unavailing because they do not concern material facts alleged in the complaint.

In conclusion, we agree with the defendants that count two of the complaint fails to state a cause of action for breach of fiduciary duty. The court, therefore, properly granted summary judgment with respect to the breach of fiduciary duty count in favor of the defendant.[21]

The judgment is reversed as to count one, and the case is remanded for further proceedings on that count; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiffs did not oppose summary judgment with respect to their breach of contract claim. We therefore affirm the judgment with respect to that count of the plaintiffs' complaint.

[2] The 2005 letter was addressed to Straw Pond Real Estate, LLC, care of

Fitzpatrick. It stated in relevant part: "This letter will serve to confirm that at its regular meeting of August 16, 2005, the [sewer authority] authorized a maximum capacity of 48,400 gallons per day to service the above captioned project consisting of no more than 242 residential age restricted units with a maximum of 484 bedrooms . . . on property consisting of approximately [fifty-seven] acres . . . subject to the terms of this letter. Straw Pond Real Estate, LLC, represents that it is the holder of option(s) from the current owners to acquire the Project Property. Straw Pond Real Estate, LLC, intends to acquire the Project Property, and to construct the Project, subject to obtaining all appropriate governmental approvals for the Project.

"*The capacity approval is subject to the following conditions* . . . .

"6. The total assessment for the Project shall be based on $8,500 for each residential unit, as finally approved. For example, if the total Project for the above 242 residential units was approved, the total assessment would be $2,057,000. . . . A unit payment in the amount of $8,500 shall be made upon application and as a condition to the issuance of a building permit for each residential unit . . . .

"7. A building service connection application, with all required engineering plans and specifications, for review and approval of connection(s) of the Project Property to the Middlebury public sewer system shall be submitted to the [sewer authority] no later than three . . . months following the date of obtaining the last of governmental approvals for the Project (without the ability of any further appeals).

"8. Each unit connection in the Middlebury public sewer system will require a separate service application with a $250.00 fee and the submission of plans for each such connection. . . .

"The owner of the Project Property shall execute and deliver a 'Sewer Use Agreement' with respect to all of the conditions recited above, on terms and conditions reasonably satisfactory to the [sewer authority], *no later than three . . . months from the date of this letter*. If the parties have not so executed and delivered the 'Sewer Use Agreement,' the [sewer authority] may, in its sole discretion, withdraw its approval of the sewer capacity allocation for the Project Property. If the entire Project has not been approved by all required governmental agencies *within two . . . year*[s] *from the date of this letter* (without the ability of further appeals), *the* [*sewer authority*] *may, in its sole discretion, withdraw its approval of the sewer capacity allocation* for the Project Property. The owner of the Project Property *may request a further extension of the two-year period* if appeals from any governmental approvals have not then been resolved, which may be denied in the sole discretion of the [sewer authority]." (Emphasis added.)

[3] Fitzpatrick testified at his deposition that he was unable to attend the November, 2007 meeting due to a family commitment and that he had asked Pocius to put the project discussion over until the sewer authority's next meeting.

[4] In its memorandum of decision concerning the sewer appeal, the trial court, *Gallagher, J.*, stated: "Although the plaintiffs claim throughout their brief that they are appealing the revocation of approval of a sewer connection, [the sewer authority] correctly points out that the application was for a determination of sewer capacity and not for a sewer connection." *Straw Pond Associates, LLC* v. *Water Pollution Control Authority*, Superior Court, judicial district of Waterbury, Docket No. CV-08-4015126-S (March 8, 2011).

[5] In count two of their complaint, the plaintiffs incorporated all of the allegations of count one and alleged that the defendants' acts or omissions were a breach of the fiduciary duty they owed the plaintiffs.

[6] In support of their motion for summary judgment, the defendants attached a copy of the plaintiffs' application for determination of capacity, which was printed on the stationery of SEA Consultants, Inc., and received by the sewer authority on May 13, 2005. The application identifies the applicant as "Straw Pond Real Estate, LLC, c/o Paragon Realty Group, 276 Post Road West, Suite 201, Westport, CT 0688 [and] co-applicant: CUDA Associates, LLC & Straw Pond Associates, LLC, 1100 Ridge Road, North Haven, CT 06473."

[7] Practice Book § 10-57 provides: "Matter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply. Such a reply may contain two or more distinct avoidances of the same defense or counterclaim, but they must be separately stated."

As will be discussed in part II of this opinion, the plaintiffs argue that the statute of limitations was tolled by the continuous representation doctrine, which is applied similar to the continuous course of conduct doctrine. Under § 10-57, "the continuing course of conduct doctrine is a matter that must be

pleaded in avoidance of a statute of limitations special defense." *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 688, 974 A.2d 764, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009).

Our Supreme Court, however, has concluded "that the plaintiff's failure to plead specifically his entitlement to a particular tolling doctrine pursuant to Practice Book § 10-57, while not a good practice, does not operate as a bar or waiver of that doctrine if the record demonstrates that the defendant, nevertheless, was sufficiently apprised of the plaintiff's intention to rely on that doctrine and that the defendant has not been prejudiced by the plaintiff's lapse in pleading." *Flannery* v. *Singer Asset Finance Co.*, *LLC*, 312 Conn. 286, 303, 94 A.3d 553 (2014). The defendants in the present case have not claimed that they were prejudiced by the plaintiffs' lapse in pleading. See also *Macellaio* v. *Newington Police Dept.*, 145 Conn. App. 426, 430–31, 75 A.3d 78 (2013).

[8] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[9] In his September 17, 2014 affidavit, Nelson, manager of Straw Pond Real Estate, LLC, and Straw Pond Holdings, LLC, attested in part: "Ben Morris died in 2012. However, Ben and I were partners in this project and talked regularly. It was our regular course of dealing to inform each other promptly of any discussions either of us had on any subject that was at all germane to the Straw Pond Project. Ben would not have engaged in any discussions with Attorney Fitzpatrick on a substantive matter without promptly informing me about those discussions."

[10] Throughout the record and in their brief on appeal, the plaintiffs have utilized the word *filed* with respect to the date they commenced this action and, at times, different dates in June, 2011, as to when this action was commenced. In Connecticut, a civil action is commenced with the service of a writ, summons, and complaint. See *Branford* v. *Santa Barbara*, 294 Conn. 803, 811, 988 A.2d 221 (2010) (generally civil action commenced by service of process). In the present matter, the marshal's return of process indicates that he made service on June 14, 2011.

[11] Among the documents the defendants attached to their supplemental brief were a letter from Fitzpatrick to Fuller conveying his sewer authority file, and shipping receipts for materials sent to Fuller, Morris, and Dan Weinreb. In his letter, Fitzpatrick stated, "*Apparently, the applicant requests that you handle the appeal.*" (Emphasis added.)

The defendants also attached copies of three briefs Fuller signed and submitted on behalf of the plaintiffs in the sewer appeal.

[12] In their sewer appeal briefs, the plaintiffs represented that "[a]ll of the additional terms [of the 2005 letter] were not acceptable and the letter was not signed by an agent of the plaintiff and returned to [the sewer authority]." The plaintiffs' September 18, 2009 reply brief in the sewer appeal stated: "The plaintiffs did not sign the letter because they did not agree with most of the statements in it and those provisions had been voted upon by the entire [sewer authority]." In a posttrial brief, Fuller stated that "Fitzpatrick, representing the plaintiffs, dealt with the attorney for the [sewer authority]. He told Pocius several times that his clients did not agree to the terms in the letter, that they had not been authorized by the [sewer authority] as part of its approval, and that there was no agreement as to the terms, fees or termination provisions in the undated, unsigned letter."

[13] Ordinarily, we decline to address claims made for the first time in a reply brief. *State* v. *Lopez*, 280 Conn. 779, 816 n.25, 911 A.2d 1099 (2007). Because this issue is likely to recur on remand, we will address it on the ground of judicial economy.

[14] The court improperly resolved a genuine issue of material by crediting Fitzpatrick's representation that he had discussed the 2005 letter with Morris and, thus, concluded that the defendants were not professionally negligent.

[15] The statute of limitations at issue in *Cefaratti* was General Statutes § 52-584. In that case, the plaintiff alleged that neither the surgeon nor his patient was aware of the surgeon's alleged negligence in failing to remove a surgical sponge at the end of the procedure. See *Cefaratti* v. *Aranow*, supra, 154 Conn. App. 5. The sponge was discovered years after the surgery. Id.

[16] In *DeLeo*, our Supreme Court identified additional reasons to adopt the continuous representation doctrine: (1) requiring a client to bring an action before the attorney-client relationship terminates would encourage the client to constantly second-guess the attorney and force the client to get a second legal opinion on the way the case is being handled, (2) requiring a client to bring a malpractice action against an attorney during the pendency of an

appeal from the underlying judgment in which the malpractice allegedly occurred could force the client to adopt conflicting legal theories, (3) the subject of the alleged malpractice is memorialized in pleadings and hearing transcripts, and (4) adoption of the continuous representation doctrine would prevent an attorney from postponing the inevitable event of defeat beyond the statute of limitations. See *DeLeo* v. *Nusbaum*, supra, 263 Conn. 594–95.

Our Supreme Court identified two more reasons to adopt the continuous representation doctrine. Id., 595. "The first is that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered. . . . The second is that the continuous representation doctrine furthers the goal of enabling the attorney to correct, avoid or mitigate the consequences of an apparent error . . . ." (Citation omitted; internal quotation marks omitted.) Id., 595–96.

[17] "While we anticipate that these standards would be applicable to all attorney malpractice cases, *we acknowledge that the implications of tolling for attorney-client relationships in the context of litigation may not be the same as those for other attorney-client relationships.* Accordingly, our holding today is *limited to cases in which an attorney is alleged to have committed malpractice during the course of litigation.*" (Emphasis added.) *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597 n.4.

[18] The record is not clear, but the defendants suggest that there were multiple reasons for the failure of the plaintiffs' project to proceed. The fact that there was a "global settlement conference" raises many factual issues.

[19] Specifically, among other things, the plaintiffs submitted an affidavit from Nelson, which is sufficient to raise a genuine issue of material fact that Fitzpatrick, along with Fuller and Pearson, continued to represent the plaintiffs until 2011. Paragraphs 13 through 17 of Nelson's affidavit address Fitzpatrick's alleged continued representation of the plaintiffs, including on the sewer capacity issue related to the alleged malpractice. In paragraph 13, Nelson avers that, although the plaintiffs hired Fuller to work on the sewer authority revocation, "[o]ur specific instructions were for . . . Fuller and . . . Fitzpatrick to work together on that appeal . . . and to my understanding, they did so."

Paragraph 14 of the affidavit states that, on August 26, 2009, Fitzpatrick participated in a legal strategy session with Fuller, Nelson, and others, just prior to a judicially supervised global settlement conference. During the strategy session, Fitzpatrick "expressed confidence that the damage done by the loss of capacity could be mitigated through that mediation." This averment, read in the light most favorable to the plaintiffs, as it must be, is evidence that Fitzpatrick continued to represent the plaintiffs on the project generally, and, along with Fuller, on the sewer capacity issue. It additionally creates a genuine issue of material fact regarding whether Fitzpatrick could still have mitigated any harm caused by his alleged professional negligence.

Paragraph 16 of Nelson's affidavit avers that Fitzpatrick attended the global settlement conference conducted by the court, *Agati, J.* Fitzpatrick purportedly spoke on behalf of the plaintiffs at that conference, including with respect to the sewer authority's revocation and the zoning issues. In paragraph 17, Nelson states that "Fitzpatrick continued to represent us on various aspects of the [project] continuously into 2011." Moreover, during his deposition, Fitzpatrick admitted that he may have answered questions regarding the sewer authority at the global settlement conference.

Although there may be evidence in the record to suggest that the attorney-client relationship between Fitzpatrick and the plaintiffs had ended in late 2007 or early 2008, it is for the trier of fact, not the court on summary judgment, to decide whether to credit that evidence over the evidence provided in Nelson's affidavit.

[20] In their appellate brief, the plaintiffs also claim that Fitzpatrick failed to inform them that he considered his representation of them to have terminated prior to August 26, 2009, which was a breach of fiduciary duty. Not only did the plaintiffs fail to plead these facts, but they also failed to make this argument in the trial court, and, therefore, we do not address this claim. See *Azzarito* v. *Planning & Zoning Commission*, 79 Conn. App. 614, 625–26, 830 A.2d 827, cert. denied, 266 Conn. 924, 835 A.2d 471 (2003).

[21] In their motion for summary judgment, the defendants claimed that the plaintiffs' complaint failed to state a cause of action for breach of fiduciary duty and was devoid of any material fact based allegations beyond profes-

sional negligence. The plaintiffs, therefore, were on notice that the defendants were challenging the legal sufficiency of that count of their complaint. The plaintiffs apparently made no effort to amend their complaint to cure the defect, if possible. Having failed to amend their complaint before the court rendered summary judgment on the breach of fiduciary duty count, the plaintiffs may not replead that count on remand, as judgment has entered on that count.

---